```
1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    --------------------------------------x
     CARLOS COLLAZOS,
3
                          Plaintiff,
4
             versus                           21 CV 2095 (PKC)
5
     GARDA CL ATLANTIC, INC.,
6                                             U.S. Courthouse
                          Defendant.          Brooklyn, New York
7    --------------------------------------x
                                              November 10, 2021
8                                             11:00 a.m.

9

10         Transcript of Civil Cause for Premotion Conference

11

12   Before:     HONORABLE PAMELA K. CHEN,

13                          District Court Judge

14

15                          APPEARANCES

16   Attorney for Plaintiff:
     MOSER LAW FIRM P.C.
17   5 East Main Street
     Huntington, New York 11743
18   BY:  STEVEN J. MOSER, ESQ.

19   Attorney for Defendant:
     HOLLAND & KNIGHT LLP
20   31 West 52nd Street
     New York, New York 10019
21   BY:  LOREN L. FORREST, JR., ESQ.

22   Official Court Reporter:
     MICHELE NARDONE, CSR
23   Email:  Mishrpr@aol.com

24   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
25
```

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1          (Via videoconference.)

2          THE COURT:  Good morning, everybody.

3          MR. FORREST:  Good morning, Your Honor.

4          MR. MOSER:  Good morning, Your Honor.

5          THE CLERK:  Civil cause for premotion conference,

6    Docket 21 CV 2095, Collazos versus Garda CL Atlantic, Inc.

7          Before asking the parties to state their

8    appearances, I would like to note the following:  Persons

9    granted remote access to proceedings are reminded of the

10   general prohibition against photographing, recording, and

11   rebroadcasting of court proceedings.  Violation of these

12   prohibitions may result in sanctions, including removal of

13   court-issued media credentials, restricted entry to future

14   hearings, denial of entry to future hearings, or any other

15   sanctions deemed necessary by the Court.

16         Will the parties please state their appearances for

17   the record, starting with the plaintiff.

18         MR. MOSER:  Steven Moser, for the plaintiff.

19         THE COURT:  Good morning.

20         MR. MOSER:  Good morning.

21         MR. FORREST:  Good morning, Your Honor.  Loren

22   Forrest, for the Garda entities.

23         THE COURT:  Good morning to you as well.  That's

24   Mr. Forrest, right?

25         MR. FORREST:  Yes.

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1           THE COURT:  Okay, good.  All right.

2           So we are here on the request of defendant to file a

3    motion to compel arbitration and then to stay these

4    proceedings pending that arbitration.  The parties have

5    obviously outlined, or at least the defense has outlined the

6    issues it intends to raise in its motion, and plaintiff has

7    responded.

8           Obviously, the format is somewhat limited because my

9    rules require that these be done in three-page submissions.

10   So I understand that you may elaborate or even add points to

11   the motion if it's filed.

12          What I wanted to do, though, was discuss what I

13   think the issues are that should be addressed and perhaps

14   first to raise one issue that wasn't discussed by either side

15   but I want to see if there is agreement on it.

16          So I think there are three issues that have been

17   raised by the parties' letters; and so the first of those

18   issues is whether or not the plaintiff is -- I shouldn't say

19   the first, but this is my prioritization of them.  But the

20   first is which CBA applies, the 2017 or the 2018.  The second

21   is whether or not the grievance and arbitration procedures

22   described, substantially similarly in both of those

23   agreements, are mandatory or permissive, and then the third

24   issue would be what is the scope of this grievance and

25   arbitration clauses and do they encompass the statutory

Collazos v. Garda

1   claims, the New York Labor Law claims that have been brought

2   by plaintiff and the putative class.

3           The fourth issue -- and this is one, as I said

4   before, to me is actually the priority issue or maybe the

5   first issue and isn't addressed by the parties or raised.  So

6   maybe it's a nonissue from your perspective, and that is who

7   decides arbitrability of these claims.  So as the parties, I

8   presume, are aware, there is a presumption that the Court or

9   the judicial system decides the question of whether or not the

10  issue is arbitrable and/or whether or not the arbitrator

11  should decide -- it's hard to say -- arbitrability.

12          Do the parties agree that the Court should decide

13  that issue?  And let me start with the defense, since it's

14  their motion.  Mr. Moser?

15          MR. MOSER:  The defense or the plaintiff, Your

16  Honor?

17          THE COURT:  The defense -- I'm sorry.  Yes.  You are

18  Mr. Moser.  You are for the plaintiff.

19          Mr. Forrest.  I'm sorry.

20          MR. FORREST:  No problem, Your Honor.  Yeah, I think

21  the defense would concede that the courts usually decide

22  arbitrability in these matters.

23          THE COURT:  Mr. Moser, any disagreement from you?

24          MR. MOSER:  No, and I believe the rules of the FMCS

25  state that they actually will not decide arbitrability, so.

Collazos v. Garda

1        THE COURT:  Okay.  That's fine then.  So that's

2   really a nonissue, and I'm glad to hear that.

3        Then, with respect to the different issues that are

4   going to be briefed -- and, quite honestly, I do think

5   briefing is necessary.  I know, Mr. Forrest, you have

6   suggested that maybe we could just or I could resolve them via

7   this conference.  I don't think I can, and I do want to give

8   both sides a full opportunity to raise their issues, because I

9   think they are somewhat complicated, and while I can look at

10  the relevant provisions that have been pointed out, I do want

11  to have a chance to or I do want to give both sides a chance

12  to argue this since it's fairly significant motion that's

13  being made and will obviously affect the trajectory of this

14  case substantially.

15       So I have a few questions.  Then I will open the

16  floor, if you want to raise anything before we set a briefing

17  schedule.  The first question I have relates to which CBA

18  applies.

19       When exactly did plaintiff terminate his employment

20  or leave the company?

21       MR. MOSER:  He left his employment in the summer.  I

22  believe it was August of 2018, prior to the effective date of

23  the second CBA.

24       THE COURT:  Okay.  So the second CBA took effect on

25  September 1, 2018, even though it was negotiated in, or signed

MICHELE NARDONE, CSR -- Official Court Reporter

6

Collazos v. Garda

1    I guess, in July 2018.

2            Is that correct, Mr. Forrest?

3            MR. FORREST:  Yes, that is correct.  I think those

4    dates are correct.

5            THE COURT:  So there is no disagreement that the

6    plaintiff was no longer working at the defendant's company --

7    or the defendant, I should say, Garda, G-A-R-D-A -- by the

8    effective date of the 2018 CBA?

9            MR. FORREST:  Yes, I believe that's correct.

10           Hold on.  I just want to pull up the effective date.

11   I would point out that the agreement was --

12           THE COURT:  It was being negotiated while he was

13   there, or it was executed while he was still there?

14           MR. FORREST:  Yes, that's true.  That's true.  So it

15   was executed, I believe, on July 23, 2018.

16           THE COURT:  Right.  But it took -- but its effective

17   date was September 1, 2018?

18           MR. FORREST:  Yes, it does say September 1, 2018.

19   That's correct, Your Honor.

20           THE COURT:  Okay.  So there is no dispute that the

21   plaintiff was no longer working at the company by the

22   effective date of the 2018 CBA?

23           MR. FORREST:  I believe that's correct, yes.

24           THE COURT:  Okay.  Obviously, both sides will argue

25   about whether he is still bound by it, but I want to make sure

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1   there wasn't any factual dispute since it's not part of the

2   complaint itself or wasn't specified in the complaint.

3           Then the other question I have is whether the

4   plaintiff agrees with the defendant's characterization about

5   the amount in controversy, since obviously federal

6   jurisdiction does depend on the threshold amount being met and

7   defendant has set forth calculations indicating that it is

8   exceeded.

9           So I want to know if the plaintiff agrees with that,

10  not that you agree with the calculation; but, do you agree

11  that there isn't an issue about jurisdiction, diversity

12  jurisdiction, based on the jurisdictional amount?

13          MR. MOSER:  I believe that we agree with the

14  defendant that the jurisdictional threshold has been met.

15          THE COURT:  So you are not disputing the removal of

16  this case; is that correct, Mr. Moser?

17          MR. MOSER:  That's correct.

18          THE COURT:  Okay.  Then, another question I have is:

19  What effect -- and, obviously, this is strictly part of the

20  dismissal motion -- the arbitration motion, but what would

21  happen to the class action if I find that the 2018 CBA

22  controls?  And this is a question for you, Mr. Moser.

23          Wouldn't that have an effect on the class itself?

24  In other words, wouldn't the class have to be limited to

25  employees who left -- actually, let me take that back.

Collazos v. Garda

1          Well, it would eliminate the class.  I guess if I

2     decided that the 2018 CBA controlled, in theory, there could

3     be no class action.  Would you agree with that, Mr. Moser?

4          MR. MOSER:  Yes, I would.  I would suggest that it

5     is probably an all-or-nothing scenario because the contract

6     itself specifies the authority of the arbitrator.  The first

7     agreement does not limit the authority of the arbitrator to

8     arbitrate classwide disputes, while the second one does.

9          THE COURT:  Right.  Okay.  Then, conversely -- this

10     is what I was thinking of originally -- if I decide the

11     2017 CBA controls, that would affect the class itself.  It

12     could be certified; is that correct, Mr. Moser?

13          MR. MOSER:  That would be plaintiff's position, yes.

14          THE COURT:  Okay.  So it would have to be limited to

15     employees who, like the plaintiff, left before the effective

16     date of the 2018 CBA?

17          MR. MOSER:  I don't believe it would have to be

18     limited because to the extent that that arbitration clause is

19     enforceable, it doesn't limit the scope of any class.  It

20     doesn't -- it just says that for the purposes of this

21     arbitration there is no limit on the arbitrator's authority to

22     decide it on a classwide basis.

23          MR. FORREST:  May I respond to that, Your Honor?

24          THE COURT:  Yes, please.

25          MR. FORREST:  I think that's -- that would just be

Collazos v. Garda

1    fundamentally incorrect.

2            First of all, the 2018, the one with the class

3    action, the limitations on class action is the controlling

4    agreement; but if you were to find -- and we would severely

5    disagree -- that the other, the earlier CBA controls, the

6    class would be limited to only individuals such as the lead

7    plaintiff, meaning such as Mr. Collazos, meaning that it would

8    only be limited to people like him, who worked for us from

9    before September of 2018 and left.

10           And I want to be clear that that's not consistent

11   with collective bargaining negotiations.  The union, in a

12   collective bargaining agreement -- and I know you might be

13   getting into this later and I might be skipping ahead -- it's

14   a living, breathing document; and there is no question in this

15   matter that Mr. Collazos did not bring his claim until this

16   year, until 2021.  So he is stuck with the 2018 agreement.

17           But if you were to find -- we would think

18   incorrectly, respectfully -- that the earlier agreement

19   applied, the class would be severely limited.  It would change

20   the class entirely.  It would be, I would suspect, a much

21   smaller class of people who worked for us at that time and

22   left before the effectiveness of the other agreement.

23           THE COURT:  You know, I missed part of that.

24           MR. FORREST:  I don't think the union would agree

25   with that, and I think there is case law in the Second

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1    Department -- sorry -- Second Circuit that deals with this

2    issue.  There is a lot of collective and class action cases,

3    and they are brought to the arbitration rules that are in

4    effect at the time the plaintiff brings his or hers there.

5           THE COURT:  Well, obviously, the plaintiff relies on

6    the decision of my colleague Judge Brodie that was affirmed by

7    the Second Circuit, although -- or I shouldn't say although --

8    which seems to address this question about the binding nature

9    of a subsequent memorandum of agreement; and that case is -- I

10   can't pronounce the plaintiff's name correctly, but it's

11   Agarunova, A-G-A-R-U-N-O-V-A.

12          So you think Agarunova doesn't apply, is

13   distinguishable, or just was wrongly decided?

14          MR. FORREST:  I don't think that's the correct law,

15   Your Honor, just to be clear.

16          CBAs are living, breathing documents, right, and the

17   plaintiff at issue in our case, right, he is filing his

18   arbitration -- he has filed a case in 2021 for alleged, you

19   know, violations of law that occurred in 2016 to roughly like

20   2018, and there is only a statute of limitations of about six

21   years there on statutory claims.  So he would get claims back

22   to 2015.

23          He chose to bring his claim now.  He chose to bring

24   his claim in 2021, after the union had negotiated another

25   agreement; and I have looked at that case, but the union

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1   wasn't party to that agreement.  So, I'm sorry, I don't think

2   the union weighed in on that case.  I think they would have

3   something different to say in that case, and I think the union

4   at issue in this case would be a necessary party.

5           THE COURT:  Go ahead.

6           MR. FORREST:  All right.

7           THE COURT:  I'm not sure I agree with that because

8   the plaintiff was part of a union, which had a CBA with the

9   defendant at the time of her employment.  That was in 2014 or

10  so.  She brought her case in 2016.  So obviously later and

11  after she left the company.

12          It doesn't seem to me that Agarunova and any of the

13  relevant cases stand for the proposition or address the

14  proposition that or suggest that it's the timing of the

15  lawsuit that matters as opposed to the timing of the

16  employment and what CBA was in effect at the time; and I think

17  Agarunova does stand for the proposition there that the

18  plaintiff was not bound by the 2015 agreement that was

19  negotiated after she left but rather she -- I'm sorry.  Oh, I

20  might have assumed something -- yes, I think that's right.

21  Yes, I think that's right.

22          So she wasn't an employee in 2015, when there was a

23  different agreement signed that would have required

24  alternative dispute resolution, and that in 2014 there was no

25  such agreement, only an agreement to try to agree later.

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1      So I think that that is a legitimately cited case

2   for the proposition that a later negotiated or executed

3   agreement or CBA, such as the 2018 CBA, would not bind an

4   employee who left before the effective date.  So even to the

5   extent that we are talking about -- we are really talking

6   about class actions, of course, not this plaintiff, but that

7   it wouldn't prevent similarly situated plaintiffs from joining

8   a class and bringing this action.

9      MR. FORREST:  One issue I want to address that's a

10  little different in that case than ours is this:  That in that

11  case they were deciding whether it was arbitrable or not,

12  right?  The arbitration provisions in the 2018 and the earlier

13  agreement are the same.  There is no question that it's

14  arbitrable.  Okay.

15      So once you define that it's arbitrable, our

16  position is, number one, it is arbitrable, because we speak

17  about -- we don't have the defects of other cases.  We speak

18  about all the claims involving the work and we speak about

19  claims under state, federal, or local law of any kind; and

20  that's been adjudged by at least the Second Circuit to

21  encompass New York Labor Law claims, statutory claims,

22  wage-and-hour claims.

23      So, once you get to the fact that it's arbitrable,

24  then the question is what's the jurisdiction of the

25  arbitrator, right.  The jurisdiction of the arbitrator here,

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1  in our opinion, is different because now you have determined

2  it's arbitrable and now the arbitrator has to follow the

3  collective bargaining agreement that's currently in effect;

4  and that's the difference, to me, that I would like to draw

5  between those cases.

6          Finding it is not arbitrable at all is different

7  than finding here that it is arbitrable and what are the terms

8  of the arbitration, because the union and their lawyer have

9  come up with this means, with this mechanism, right.  So once

10  the claims go to arbitration, then the arbitrator is bound by

11  the collective bargaining agreement that is in effect now but

12  not from certain years ago; and there are other issues there

13  as well.

14          That's what the parties, I would say, contractually

15  agreed to, right, concerning their relationship.  It goes on

16  over years, right.  So the union gets together with the

17  employer, they come up with -- every year they come up with

18  different terms and conditions about how their arbitrations

19  were going.

20          I think the FAA does promote that, meaning that they

21  want to have -- people should have assurances that when they

22  enter into a contract that the courts will, A, enforce that

23  contract and abide by the terms of the parties, the two

24  different parties agreed to.

25          THE COURT:  Yes.  I mean, listen, I'm not going to

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1    resolve this today.

2           I do have to tell you I'm not sure I agree with your

3    analysis of Agarunova, because I think there Judge Brodie

4    basically was addressing whether the plaintiff was bound by

5    ADR, an ADR provision that was implemented in a later

6    agreement but didn't exist in any employment agreement or CBA

7    at the time she was employed at the company.  If anything, the

8    arbitrability decision was delegated to the arbitrator.

9           So, really, I don't think it was for Judge Brodie to

10   decide ultimately; but, again, I guess I just want to say that

11   I think this is an issue that has -- that obviously I have to

12   resolve, and I will hear more fully from the parties on that.

13   Like I said, I don't think I can resolve it now, but I did

14   want to point out that case because I think it may have some

15   relevance to the discussion.

16          I don't know if you wanted to comment at all,

17   Mr. Moser, but, again, I'm not going to resolve it today but I

18   did want to note that decision because it appears close in

19   terms of the facts and the issue addressed.

20          MR. MOSER:  Thank you, judge.  I just wanted to make

21   one comment:  That I anticipate that the union and Garda will

22   both argue that they are no longer bound by this prior

23   agreement and that their current agreement, the 2018

24   agreement, is the one that binds them and that, therefore, the

25   arbitrator does not have the power to hear class and

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1    collective actions.  If that is the case, our position would

2    be that the arbitrator does not have the power to hear this

3    case.

4          THE COURT:  Say that again.  I'm sorry.  You are

5    now --

6          MR. MOSER:  Yeah.  So basically we have our client

7    is not bound by the subsequent agreement.  He filed a class

8    and collective action.

9          The union and the employer, the parties to that

10   subsequent agreement, are saying that any arbitrator that is

11   selected cannot hear it on a class or collective basis.

12   Therefore, the arbitrator does not have the authority to hear

13   this class action.

14         THE COURT:  Even if the class is defined as

15   individuals who left the company before September 1, 2018?

16         MR. MOSER:  Correct.

17         THE COURT:  Oh, and then your view is that, well,

18   you can always argue to the arbitrator that that's wrong,

19   could you not?

20         MR. MOSER:  We could, but the issue with regard to

21   the FMCS, who is the arbitral forum, is they will not decide

22   the arbitrability of any particular issue.  That would be

23   something that would left for the Court.

24         THE COURT:  But the definition -- so I'm a little

25   bit confused.

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1          This is just speaking hypothetically.  If I were to

2     decide that this matter should go to arbitration, or that it's

3     arbitrable, and you were before the arbitrator, your view is

4     that the arbitrator could decide -- well, let me go back and

5     say something further.  Sorry.  And if I also decided that the

6     plaintiff in any class -- oh, I guess at that point the

7     finding of the class, who would decide that?  I guess not the

8     arbitrator because the arbitrator can't entertain class

9     actions, you would say.

10          MR. MOSER:  Correct, and even if the Court at that

11     moment would decide, based upon a limited class, and send it

12     to the arbitrator, the arbitrator would not have the authority

13     to hear it as a class under the current agreement between the

14     employer and Garda.

15          THE COURT:  Right.

16          MR. MOSER:  And we believe that the union would

17     argue against this in arbitration and say that, hey, he cannot

18     bring any claims on a class or collective basis.

19          THE COURT:  Well, this raises another question I

20     wanted to ask both sides, perhaps more so to the defendant,

21     whether or not this motion to compel arbitration is premature.

22     Because it seems to me I could decide that the issue would be

23     a class certified that is not governed by the 2018 CBA.

24          In other words, it seems conceivable that the class

25     if it's defined -- rather, it seems conceivable that even if I

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1   decide the 2018 CBA would apply or -- scratch that.  I'm

2   saying it all wrong.

3          If I decide that the 2018 CBA does not apply to the

4   plaintiff or any class certified of employees who left the

5   company before September 1, 2018, shouldn't -- wouldn't it be

6   premature then to refer this to arbitration or to find that

7   arbitration -- to decide a motion to compel arbitration

8   because, just as Mr. Moser is pointing out, the arbitrator

9   would take the position, as would the union, that he or she

10  could not consider any class claims.

11         MR. FORREST:  No, Your Honor; and I can explain to

12  you why I think that is the case.

13         Part of the reason we were in settlement

14  negotiations is partly because of this issue.  These things

15  have to work themselves out.  So our position is

16  straightforward and clear, that both CBAs, in the beginning

17  part of those CBAs, have the same exact, identical arbitration

18  clause.

19         We are certain that the claims are arbitrable,

20  right, because if you look at either claim they are both

21  arbitrable, right.  It's the same exact, identical clause.

22         The clauses change as you go down, about what's

23  going to happen in that arbitration, but whether the claims go

24  to arbitration is still there.  So it would have to wind

25  itself out correctly, as it should, meaning let the system

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1    work.  So that Mr. Moser -- I'm sorry.  Let me jump back.

2            We believe Your Honor should and would rule in favor

3    of arbitration because, remember, the initial arbitration

4    statements are the same.  Then, if the -- then, if Mr. Moser

5    is bringing his purported class action, which, again, as Your

6    Honor correctly pointed out, should be correctly narrowed to

7    just those people who the class could be, I don't know, that

8    are people who worked for us, you know, from X -- it's really

9    only 2016 because there is a statute of limitation of six

10   years.

11           So it would be the people who worked for us from

12   2016, you know, that's six years from the date he filed this

13   case, and left us before September of 2018.  And then, after

14   that, then if he brought that to the arbitrator and the

15   arbitrator refused to hear those claims, then, I believe, he

16   could come back to you and say, I believe that is an error;

17   but the system has to work itself out because the arbitrator

18   is there to decide these sorts of disputes, and that's the way

19   it should work.

20           THE COURT:  Let me back up here because there is a

21   cluster of issues that are interrelated, but it seems to me

22   there is some priority of deciding them because of the impact

23   they have.

24           So your argument, Mr. Forrest, let's assume I don't

25   find that the CBA provides for -- or rather, that arbitration

Collazos v. Garda

1   is permissive rather than mandatory under the CBA, because, as

2   I said before, there are those three issues to decide.  One is

3   scope.  So, loosely, arbitrability of the claim; and let's say

4   I agree with you, because there is a clause in there that

5   talks about claims based on federal, state, or local law.

6        So I don't think I'm revealing anything all that

7   revelatory, but that seems to me to support your argument that

8   the claims themselves could be subject to arbitration or come

9   within the scope of the grievance in arbitration clause in

10  both CBAs, whichever one applies.

11       MR. FORREST:  Yes, Your Honor, but -- sorry, Your

12  Honor, my apologies.

13       THE COURT:  But then the other issue though that, I

14  think, has some implication as to whether or not the class

15  should be certified first or that class certification should

16  be addressed first is whether or not the CBAs, both of which

17  contain substantially the same language, require grievances to

18  be arbitrated; and that's the part, I guess, of your motion to

19  compel arbitration.  And there, I will tell you, I'm not quite

20  as sure, because the "shall" language that you cite -- and

21  this is slightly different than the argument the plaintiff

22  made in his letter -- to me, relates more to certain timing

23  requirements.

24       So in Article 4C it basically says that the company

25  shall have 14 days to respond to a grievance and then the

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1    union shall have 14 days to request mediation or arbitration.

2    Reading those together, it really suggests, pretty strongly to

3    me, that the "shall" governs the amount of time proposed, but

4    it doesn't necessarily require that arbitration or mediation

5    be requested.  I think you certainly would agree that you are

6    not arguing that mediation must be requested.

7            The logical reading, to me at least, of 4C is that

8    if you are going to request arbitration or mediation, the

9    union, you have to do so within 14 days; and then, to me, that

10   makes the other two sentences cited by both sides in 4C make

11   more sense.

12           There is another sentence -- this may not be cited

13   by either side -- but it says, Prior to actual submission to

14   arbitration, a management-union meeting shall be scheduled.

15   So, again, it makes this meeting mandatory; but, again, it

16   doesn't say the arbitration is mandatory.

17           And then, the purpose of it is to attempt resolution

18   of any disputes for which arbitration has been requested.

19   Again, it doesn't say that arbitration must be requested.  It

20   suggests something more permissive.  So, any claim for which

21   arbitration has been requested.

22           Then there is this last sentence, which is discussed

23   by the parties, if, after such management-union meeting or

24   mediation, arbitration is still necessary because a legitimate

25   issue about contract application remains open, then both the

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1  company and the union shall -- but, again, this is they must

2  then prepare a position statement.  So it doesn't say that

3  arbitration, again, is mandatory.

4       It suggests that, actually, if it's still necessary

5  and so kind of counteracts the notion that it must happen,

6  suggesting that somebody wants it to happen, then there is

7  this shall provision about writing a statement.  Again, the

8  "shall" is always used in the context of what -- when it must

9  be done or what must be provided if arbitration is requested.

10      I think it further suggests that there may be

11  circumstances where arbitration isn't required because this

12  clause is limited to issues remaining about contract

13  application, not alleged violations of statutes.

14      So all I can say, again, to me -- and let me just

15  say this, 4D also says the arbitrator shall be selected.  But

16  that doesn't mean you have to have an arbitration.  It just

17  means that the arbitrator's selection shall be from a list of

18  seven people.

19      So I'm raising this because I want you to get some

20  idea of how I'm doing this; but, again, it informs my question

21  about whether or not it's premature to decide the issue of

22  compelling arbitration versus class certification.  I guess

23  that question about class certification will depend on

24  deciding which CBA applies, to me at least.

25      So again, there is a constellation of issues, but,

Collazos v. Garda

1  it seems to me, the prioritization depends on the impact of

2  each of these issues on each other.  So if I were, in my own

3  mind, to prioritize them, it almost seems to me I have to

4  decide which CBA controls because that may have an impact on

5  whether or not a class can be certified and what it would look

6  like.

7          And then, the other question is whether or not

8  arbitration is compelled because of the provision of either

9  CBA, because I think they are similar in that way, but

10  whichever one governs.

11          So go ahead, Mr. Forrest.

12          MR. FORREST:  Surely.  Yes, Your Honor.

13          Well, I think, pursuant to the Second Circuit case

14  cited by plaintiff, it's clear that if once we decide what is

15  a grievance, right, so that's the first step.  We have to

16  decide what's a grievance; and here we have a very long

17  explanation of what's a grievance.  We talk about

18  compensation, benefits, and hours; and, unlike the Second

19  Circuit case cited by plaintiff, and unlike that case, we have

20  the language here that says, or any other claim under federal,

21  state, local law, statute.

22          So we are clear that statutory claims, like this

23  New York Labor Law claims in this case, fall into what's a

24  grievance.  It's defined.

25          So then, once you go into -- once Your Honor can

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

 1    decide and once the Court decides that it is a grievance, then

 2    we go to -- we would drop to B and C, as Your Honor just

 3    talked about.  That's a common process, Your Honor; and I

 4    don't believe it is permissive meaning that it's a grievance

 5    because it shall be presented to the company.

 6         And the thing that, I think, plaintiff is talking

 7    about as saying is permissive, that's not true.  What's

 8    mandatory is that the response that mediation, quote-unquote,

 9    is mandatory, right, or at least the parties have an actual --

10    because it says prior to actual submission, prior to

11    submission to arbitration.

12         So I would interpret 4C, I believe, slightly

13    different than plaintiff's counsel because it's clear that

14    before you arbitrate it says a union and a management meeting

15    shall be scheduled in an attempt to resolve the dispute,

16    right.  So it's clear that it shall.

17         It says in the agreement to submit the grievance to

18    mediation, shall stay arbitration until the mediation is held.

19    So again, a "shall."

20         Then, they say, if such management -- if after such

21    management-union mediation or arbitration is still necessary;

22    and so all that is, Your Honor -- and it may not be worded

23    exactly greatly, and I concede that to Your Honor, the Court,

24    and to plaintiff -- it's setting forth a mediation process.

25    And, I would say, it's setting forth a process much like the

24

Collazos v. Garda

1    Court has.

2            I know the Court --

3            THE COURT:  Can we back up for a minute,

4    Mr. Forrest?

5            MR. FORREST:  Yes.

6            THE COURT:  I have to stop you.

7            The second sentence of C says, If any response is

8    deemed inadequate by the union, then the union shall have 14

9    days to request mediation or arbitration.

10           How does that sentence make arbitration mandatory,

11   because it says mediation or arbitration?  Is mediation

12   mandatory?

13           MR. FORREST:  Yes.  I want to be clear that the

14   union shall.  The union has its time to decide if they want to

15   go straight to mediation or arbitration.

16           THE COURT:  Exactly.  They have an amount of time to

17   decide, but it doesn't mean they have to choose either, as

18   opposed to go to court.  That's what I'm trying to get at

19   here.

20           The "shall" doesn't seem to modify at all clearly

21   the requirement of arbitration or mediation.  It just governs

22   the time frame.

23           MR. FORREST:  I would respectfully disagree.  They

24   only have those two choices.  There is no other choice.

25           You can -- upon submission of the grievance to the

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1   company, the union shall.  The union has the time to either do

2   mediation or arbitration.  There is no other choice on there,

3   and that's the union's choice.  So whether you are looking at

4   the earlier agreement or the 2018 agreement, the union has a

5   choice, and they would probably be a necessary party to this

6   now.

7           What's going on now is this.  Nothing has been

8   submitted.  I think maybe we don't necessarily agree about

9   some things, but it's a grievance, right; and then, there is a

10  grievance and arbitration provision.

11          Once you get to the grievance and arbitration

12  provision, almost every collective bargaining agreement has

13  some period of, quote-unquote, you get to decide, you have to

14  meet, you have to talk, if the parties don't disagree, then,

15  if necessary, you go to arbitration; but that's it.  You go to

16  arbitration or you stick to a mediation; but you have to

17  follow the CBA.  You don't get to go to court here.  There is

18  nothing left here for that.

19          An agreement shall be submitted in writing.  I think

20  we can all agree that the provision in B has not been -- that

21  no grievance has been presented by the union; and that hasn't

22  been followed, and he was a unionized employee.  So this

23  provision is consistent with the agreement between the union

24  and the employer, so that instead of just going straight to

25  arbitration you have to sit down and you have to go straight

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1    to arbitration or you go to mediation.

2            If you go to mediation, you attempt to resolve the

3    dispute.  If you don't resolve the dispute, that stays your

4    time; and it says "shall stay" in the arbitration until the

5    mediation.

6            So it's clear that it's not just the timing.  There

7    are obligations, I would respectfully state to the Court,

8    about what you have to do once you decide and once I believe

9    this Court would decide it's a grievance.  Then the parties

10   have to follow the grievance procedure and mechanisms, which

11   is submit the grievance, which is the union decides if you get

12   14 days and then you decide if you are going to request

13   mediation or arbitration.  It doesn't say or Court.  It

14   doesn't say that.

15           And then, after that, you go forward with either

16   mediation, arbitration, or, honestly, in many, many union and

17   employer situations, resolution, right, settlement.  That's

18   also and always an option.

19           So I would respectfully say to the Court we have a

20   grievance, as defined by Second Circuit law, right, for

21   statutory claims.  So Your Honor would, respectfully, have to

22   let the process take place, and it's not appropriate at this

23   time and, I believe, it would be premature at this time to

24   decide -- for this Court to decide if there is any class or if

25   a class can be presented.

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1          The grievance should be presented.  Then let the

2     union and the employer work out this mediation schedule; and,

3     if they can't, if Mr. Moser and his client don't agree, then

4     and then only, only then can we get to this issue about a

5     potential whether he could bring a class action claim in

6     arbitration.

7          THE COURT:  Let me ask you a question.  If I decide

8     that the 2017 CBA governs here, then the class could be

9     certified of people who meet, who didn't -- who stopped

10    working at the company before September 1, 2018, correct?

11         MR. FORREST:  I think potentially, Your Honor,

12    potentially.  Potentially, yes, that is a potential to how

13    people would think that would happen.

14         THE COURT:  But if that happens, then --

15         MR. FORREST:  But you don't -- but, Your Honor, I

16    think, first of all, it would have to work its way through.

17         THE COURT:  No, but that's my point.  Again, I'm not

18    deciding the class cert issue now because no one is moving for

19    it; and that's my question.

20         If I decide the 2017 CBA governs, then the logical

21    conclusion or inference is that a class can be certified of

22    people like the plaintiff.  That could define the class.

23         Then the problem becomes if I agree with you that

24    arbitration is compelled under the 2017 CBA, then it seems

25    like the parties are agreeing that the class claims cannot be

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1    arbitrated -- although I'm curious on why Mr. Moser thinks

2    that -- because, it seems to me, that if the 2017 CBA governs

3    why can't the arbitrator decide class claims.

4            MR. MOSER:  Well, Your Honor, let me just clarify.

5            To the extent that the Court feels or believes that

6    the earlier CBA is the governing document and refers this to

7    arbitration, there is nothing in that document which limits

8    the scope of any class that can be certified, nothing.

9            The second CBA has a limitation on class

10   arbitrations; and, under the second agreement, the arbitrator

11   would not have the authority to decide it on a class and

12   collective basis, but there is no prohibition under the first

13   agreement for the arbitrator to decide this on a class and

14   collective basis.

15           THE COURT:  Right, and?

16           MR. MOSER:  Regardless of -- because that's the

17   governing document then.

18           THE COURT:  Right.  So what's the upshot?

19           If you end up in arbitration with a class action

20   still intact, what are you going to argue to the arbitrator

21   about the scope of that arbitrator's authority?

22           MR. MOSER:  Well, I believe that, with regard to the

23   scope of the arbitrator's authority, if we end up there, the

24   scope of the arbitrator's authority is governed by that first

25   agreement, which has no limitations whatsoever with regard to

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1    class certification.  But, respectfully, I don't think we get

2    there here.

3              You know, when we look at a lot of other cases, the

4    CBA has language that says arbitration is the sole and

5    exclusive remedy; and that's in case after case after case

6    after case.

7              If the parties wanted to make this the sole and

8    exclusive remedy, we are talking about very sophisticated

9    entities, you know, and that language is nowhere in this

10   document.

11             MR. FORREST:  Your Honor?

12             THE COURT:  Let's go back for a minute.  Your

13   statement, though, that there is no limitation of who can be

14   in the class under the 2017 CBA is correct, but I think it has

15   no practical effect, though, if I decide that arbitration --

16   that the claim being made by this class has to be arbitrated,

17   because then it seems like the 2018 agreement might prevent

18   the arbitrator from arbitrating any class action claim.

19             MR. MOSER:  That's the Catch-22 that we are in

20   because, again, at this point neither the union nor the

21   employer, I believe, will agree that the 2017 agreement is

22   still and is the operative agreement here.  So it's for the

23   court to decide which agreement is operative.

24             To suggest that we can go to arbitration without

25   knowing which agreement is the governing agreement, I would

Collazos v. Garda

1    respectfully disagree with that.  To the extent the Court

2    believes that one of these agreements is the governing

3    agreement, it should be, you know, it has the power and it can

4    tell the arbitrator which agreement governs.

5            It shouldn't be decided later on by the union and

6    the employer.

7            THE COURT:  I guess the only thing I'm not clear on

8    is why it is you wouldn't argue or be able to argue to the

9    arbitrator that if I decide that the 2017 CBA applies, at

10   least to the claims of the class, why it is that the

11   arbitrator couldn't decide those claims on a class basis,

12   because with respect to those claims there isn't any, you

13   know, preclusion of class actions for purposes of arbitration.

14           In other words, if you take the 2017 CBA in its

15   entirety or apply it in its entirety, then the arbitrator

16   isn't limited with respect to considering a class claim.

17   Right?

18           MR. MOSER:  I agree, Your Honor.  I agree.

19           THE COURT:  You could argue that to the arbitrator,

20   and the arbitrator could agree or disagree.

21           MR. MOSER:  Yes.  However, I think that that's going

22   to invite more litigation; and, I think, for the purposes of

23   clarity in what -- to the extent that the Court believes it

24   should proceed in arbitration, I think it behooves everybody

25   to decide this now.  Otherwise, we are going to be back before

MICHELE NARDONE, CSR -- Official Court Reporter

31

Collazos v. Garda

1  you in six months arguing over whether or not the arbitrator

2  exceeded the scope of his authority in either limiting a class

3  or granting a class; and that's really at the heart of what we

4  are talking about.

5         We are not necessarily talking only about the

6  individual claims of the plaintiff.  I don't think they

7  concern the defendant that much.  I think what concerns the

8  defendant primarily is whether this will proceed on a class

9  basis.

10         MR. FORREST:  If I can respond to that, Your Honor?

11         THE COURT:  Uh-huh.

12         MR. FORREST:  Your Honor, I think what my client has

13  at issue here and I think what the law is clear on is –– what

14  the plaintiff seeks, I think, is reasonable, right, and I

15  understand what the Court seeks is reasonable as well.

16         So that we are all on the same page, once you define

17  the grievance to mean the way we define it, right, then it's

18  an arbitration.  Then the CBA controls.  Then those steps must

19  be followed.

20         The Federal Arbitration Act is clear that once you

21  define something as a grievance, right, the parties are

22  allowed –– sorry, a grievance that is arbitrable, the parties

23  are allowed to say, okay, you know, we are going to meet.

24         And many, many, many collective bargaining

25  agreements have this in there.  I can brief that for Your

MICHELE NARDONE, CSR –– Official Court Reporter

Collazos v. Garda

1   Honor.  I will be happy to do that I will be happy to add that

2   to my briefing.

3          Many, many collective bargaining agreements have an

4   "if and" or "if that."  But they are all clear that you still

5   go to arbitration.  Meaning your only choices are grievance.

6   You submit the grievance, there is some cooling off time or

7   some meeting time; and then, if the parties don't agree, you

8   only have two options, which is -- I'm sorry, maybe three, or

9   maybe, sorry, four.  Let me put this clear because it's not as

10  permissive as the plaintiff has propounded and the Court might

11  think it is.

12         Those options are arbitration, one.  Two, the

13  mediation.  Three, resolutions to the mediation, right, some

14  settlement or some agreement.  Or the party that bring said

15  grievance, the party might drop it.

16         But one of those options is not court.  One of those

17  options is not some other dispute resolution mechanism that

18  isn't provided for in the parties' collective bargaining

19  agreement.

20         If nothing else, Your Honor, I would respectfully

21  say this.  Again, we believe that the most current agreement

22  controls, because once you get to arbitration our agreement to

23  go forward should control, meaning that even if parties have

24  left us, like Mr. Collazos many years ago, if he brought his

25  claim before 2018, when he left us, I would agree 100 percent

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1   with plaintiff that, you know, if people are anything -- if he

2   made a grievance within 14 days of August, of when he left,

3   fine; but that's actually not the case.

4           When you sign to a union, it's different than a

5   normal, everyday employee, right.  When you sign on to a union

6   agreement, the union controls your rights.  The union

7   negotiates on your behalf.  That's what they do.  Then the

8   agreements change.

9           So to say that the current collective bargaining

10  agreement doesn't control -- I'm sorry I'm going back to that

11  issue -- would not be correct; but, more importantly, as to

12  the issue of arbitration, I want to say this:  The process has

13  to work itself out.  We can't all just litigate the whole

14  thing right now.

15          So what would have to happen is he files a

16  grievance.  So Your Honor decides he has to go to arbitration.

17  He files his grievance.  We possibly sit through some

18  mediation.  If that's not successful, then it would go to the

19  arbitrator.  Then the arbitrator would make the decision.

20          Then Mr. Moser has a statutory right to claim that

21  the arbitrator exceeded his authority or improperly would not

22  allow him to proceed on his class action; and then he could

23  come back to Your Honor.  That would be the correct mechanisms

24  that would be in place in this case.

25          THE COURT:  So I don't want to go round and round on

Collazos v. Garda

1    these issues.  Let me ask two questions.

2              Mr. Moser, do you agree with plaintiff's counsel

3    that the claim, the New York Labor Law claims that are being

4    made by plaintiff and the putative class, do fall within the

5    definition of grievance?  Is there any dispute about that?

6              MR. MOSER:  No.

7              THE COURT:  Under either CBA?

8              MR. MOSER:  Correct.

9              THE COURT:  Okay.  So really the only issues, I

10   think, would have to be briefed further or more fully, as the

11   parties would like, is which CBA applies here, because that

12   obviously governs whether a class action can be arbitrated;

13   whether or not the requirements of arbitration is permissive

14   or mandatory.

15             Obviously, Mr. Forrest, you have argued at length

16   that there is no other option besides mediation, arbitration,

17   or just some agreement or resolution; but that is key here,

18   and I have already explained to you how I see the language

19   itself in both CBAs being less than clear on this point.  And

20   you can argue as much as you would like on that particular

21   point as well as -- oh, actually, really, there are only two

22   issues, I think, because everyone agrees that the particular

23   claims are covered by the grievance and arbitration clauses.

24             The only question is whether or not those clauses

25   mandate or require, would limit the grievers or the employees

MICHELE NARDONE, CSR -- Official Court Reporter

35

Collazos v. Garda

1    to mediation, arbitration, or some other negotiated resolution

2    and preclude them from going to court.  Then, the only other

3    question is which of the CBAs applies, because that will have

4    an impact on whether or not the claims can be brought as class

5    claims.

6          I think also that the parties should address what

7    the class would look like depending on which CBA applies.  I'm

8    a little perplexed, of course, by your argument that the

9    plaintiff could be bound by the union negotiating the 2018

10   agreement when the plaintiff was not -- was no longer a member

11   of the union and how it is that the union represented him in

12   any way with respect to the negotiation of that new agreement.

13         I think the case law is not nearly as clear as you

14   might suggest about the applicability of a new or superseding

15   agreement when the plaintiff is complaining about things that

16   occurred under a prior agreement and were subject to the terms

17   of that prior agreement.  So I do want to hear more about that

18   issue.

19         MR. FORREST:  Your Honor, I would just say this,

20   Your Honor.  There are a ton of class action cases in Southern

21   District, in the Second Circuit, and the unions -- the union

22   and the employers get together very often to class action

23   waivers, or no class actions, and that covers that because --

24         THE COURT:  Hang on.  Does it cover people who are

25   no longer members of the union and were not members of the

MICHELE NARDONE, CSR -- Official Court Reporter

36

Collazos v. Garda

1    union at the time these new agreements were made, about past

2    conduct?

3              MR. FORREST:  Yes.  I would pull that out.  I have

4    one now that was before, you know, because, look, New York has

5    the longest statute of limitations probably in the country on

6    the wage-and-hour claims, six years.

7              When an employer and a union get together, they do

8    that to violate these.  They do that so that going forward

9    those claims are covered; and the exact reason they do that,

10   because they have an interest in their members -- and their

11   members, current and former members -- about the process.  So

12   someone --

13             THE COURT:  Let me stop you.

14             How can a union be empowered to act on someone's

15   behalf if they are no longer a member of that union, and what

16   they are talking about existed under different terms when they

17   were members of the union and the union had negotiated a

18   different agreement on behalf of those workers?

19             Why is it fair that the union then decides something

20   else to be negotiated and that should be applied retroactively

21   to the person who is no longer supporting that union and who

22   that union no longer represents?

23             MR. FORREST:  Because they signed away their rights

24   to the union, right.  If you notice, Your Honor --

25             THE COURT:  Who, the workers?

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1          MR. FORREST:  Yes.  Sorry.

2          THE COURT:  Okay.

3          MR. FORREST:  The employees sign away their rights

4    to the union.  The union has the right to negotiate for them,

5    to their detriment and to their benefit, sometimes giving away

6    things at the bargaining table that the employees would never

7    give away, sometimes even -- even, in rare cases, conceding

8    statutes.

9          So sometimes, quite frankly, previous -- I have a

10   case right now where previous collective bargaining agreements

11   didn't cover a statutory wage-and-hour issue, right.  Some of

12   those employees who were in an agreement between the union and

13   the employer had time that they weren't paid for, right; and

14   the parties had agreed to that.  The new agreement -- and

15   there was litigation over it -- says that now you will be paid

16   for stat time, and then those people in the past were actually

17   compensated.

18         It can work to their benefit; it can work to their

19   detriment.  But the idea is the employer and the union are the

20   legal entities bargaining; and when an employee signs onto the

21   union, that's now my legal bargaining representative, and they

22   are negotiating for any and all claims while I worked for

23   them.

24         THE COURT:  Statutory claims, though?  The statute

25   hasn't changed.  So this is a right that vested back when it

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1    occurred, and the right existed then.

2              You are saying that the union could later negotiate

3    away the right of an employee, a former union member, to claim

4    damages for past actions that at the time violated the CBA

5    or -- or, actually, no violated the law.  Forget about the

6    CBA.  The CBA doesn't define the violation.

7              So that worker had a right, by virtue of law that

8    still exists, the New York Labor Law; and you are saying that

9    the union could negotiate that away.

10             MR. FORREST:  No, I'm not.  No, not at all, Your

11   Honor.  I want to clarify.

12             Supreme Court precedent --

13             THE COURT:  Just the right to arbitrate or not.

14             MR. FORREST:  Yes.  I just want to be clear.

15             Supreme Court precedent and Second Circuit precedent

16   are all clear, when concerning class action waivers, all these

17   other things, that Mr. Collazos and any and every union member

18   still have the right to have their claims heard, just in a

19   different forum.

20             So we are not extinguishing Mr. Collazos' or any

21   individual union member's right to be paid.  So if

22   Mr. Collazos or any union member comes forth, they too can

23   file a grievance and arbitration and be heard and have that

24   claim adjudicated.

25             So, like, I would throw this out to Your Honor, even

Collazos v. Garda

1  in the collective bargaining agreement, both of them say

2  something to the effect that the arbitrator shall not have the

3  right to issue a back pay award of more than six months of

4  pay; but then it says unless that's in violation of a statute,

5  right.

6          THE COURT:  You are right.  Let me --

7          MR. FORREST:  So they get their day in court --

8          THE COURT:  Stop.

9          MR. FORREST:  -- but it's just in a different

10 tribunal than they would have preferred.

11         THE COURT:  Stop, stop, stop.  When I say stop,

12 please stop.

13         MR. FORREST:  My apologies.

14         THE COURT:  Yes.  You do tend to run on a bit and

15 don't give me a chance to interject.

16         You are correct.  I agree with you on that.  I was

17 focusing on the claim and the legal basis for it, not the

18 forum, which you are arguing the union can bargain away in

19 terms of how that can be pursued.  I understand that.

20         MR. FORREST:  That's all I'm saying.

21         THE COURT:  Yes.  I apologize for interrupting you,

22 but I do need to stop you folks because I have another

23 conference.

24         What we should do is set a date for the briefing.

25 Like I said, the issues really that we should focus on are the

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1    permissive versus mandatory nature of the arbitration

2    requirement or the grievance and arbitration provisions; which

3    agreement applies, which of the two CBAs applies; and then the

4    impact of that decision on any class action or class that

5    plaintiff may seek to certify at some point.

6            All right.  How much time do you want to file your

7    motion?

8            MR. FORREST:  I might need a decent amount of time,

9    Your Honor, only because November is a very bad month for me.

10           THE COURT:  Okay.

11           MR. FORREST:  I'm away the first part of December,

12   and I know that bunches up against the holidays.  So I think I

13   just want to be fair to the plaintiff and the Court and

14   probably --

15           THE COURT:  Why don't you file the beginning of

16   January.  Does that work?

17           MR. FORREST:  That would work for me, Your Honor, if

18   Mr. Moser agrees.

19           THE COURT:  Mr. Moser?

20           MR. MOSER:  Of course.

21           THE COURT:  Mr. Moser, any objection?

22           MR. MOSER:  Of course.  Not a problem.

23           THE COURT:  Okay.  So why don't -- let me grab a

24   calendar.  Why don't we have you file or -- I will explain in

25   a moment -- serve your motion by January 7.  Can you do that?

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1   It's a Friday.

2           MR. FORREST:  I think that seems fair, Your Honor.

3   Yes.

4           THE COURT:  Okay.

5           MR. FORREST:  I'm sorry.  Hello.  I have a conflict

6   on that day.  Can I do the 11th, Your Honor?  It's just the

7   following Tuesday.

8           THE COURT:  Okay.  Not the 10th, the Monday?

9           MR. FORREST:  Just the 11th, because it looks like

10  there is something else on my calendar that Monday, and my

11  time is blocked out and I can't see what it is.

12          THE COURT:  All right.  So January 11 for

13  defendant's motion.

14          Do you want 30 days or more, Mr. Moser, to respond?

15          MR. MOSER:  Thirty days will be sufficient.

16          THE COURT:  Okay.  So that takes us to February -- I

17  will give you to February 4.

18          MR. MOSER:  February 11.

19          THE COURT:  No, February 8 is 30 -- February 10 is

20  30 days.  So we will give you to February 11.

21          MR. MOSER:  That's fine, Your Honor.

22          THE COURT:  Okay.  Then two weeks for a reply, if

23  any.  So that's February 25.

24          MR. FORREST:  More than fair.

25          THE COURT:  Okay.  Now, as you may or may not know,

MICHELE NARDONE, CSR -- Official Court Reporter

42

Collazos v. Garda

1   I do encourage what they call bundling, which means that,

2   Mr. Forrest, you would simply serve Mr. Moser with your

3   motion; Mr. Moser, you would simply serve Mr. Forrest with

4   your opposition; and then, on the last date, which is

5   February 25, both sides would file their respective

6   submissions or pleadings.

7           The reason I do it is because we have some internal

8   deadlines that are triggered by the filing of the motion.  So

9   if you follow this practice, it allows me to be more liberal

10  about giving either side more time, because then you are not

11  eating into my internal clock to decide.

12          But you do not have to follow that practice.  Follow

13  the Second Circuit.  They say that you can do whatever you

14  want, especially if you think are going to run afoul of some

15  other statutory deadline.

16          The only thing I ask you to do is file your cover

17  letter when you -- on the docket, when you serve your

18  respective motion or opposition, so that we have a record that

19  you complied with the timing or the scheduling.  Okay?

20          MR. FORREST:  That would be agreeable to defense

21  counsel, Your Honor.

22          MR. MOSER:  That's fine.

23          THE COURT:  Okay.  Good.  All right.

24          Thank you both very much.  I apologize for having to

25  curtail this, but I do have another 12 o'clock criminal matter

MICHELE NARDONE, CSR -- Official Court Reporter

43

Collazos v. Garda

1   that they are waiting for me on.  So thank you very much.  I

2   appreciate both of your arguments.

3           Let me say one last thing.  Mr. Forrest, even though

4   I was pushing back on your interpretation of the mandatory

5   nature of the CBA, obviously, I have been keeping an open

6   mind, and your argument obviously has some force.  I'm sure

7   many courts would find or have found that similar language,

8   you know, should be interpreted the way you suggest, that

9   there are no other options than the two that are mentioned.

10          But I did want to at least give you some idea of how

11  I think it also can be read.  So you are on notice that you

12  should address that potential interpretation.

13          MR. FORREST:  Thank you, Your Honor, for giving me

14  that.  Thank you.

15          THE COURT:  Yes.

16          MR. MOSER:  One more -- I have one more question.  I

17  don't know if the Court has time.

18          THE COURT:  Yes.  Go ahead.

19          MR. MOSER:  Very quickly.  Arbitration is a creature

20  of contract.  To the extent that the employer in this case is

21  going to argue that agreeing to arbitrate claims under the

22  prior agreement is violative of their current agreement with

23  the union, I would ask that they state as such so that's not

24  raised at a later date.

25          MR. FORREST:  I don't follow.  I'm sorry.

MICHELE NARDONE, CSR -- Official Court Reporter

44

Collazos v. Garda

1          THE COURT:  Yes.  I'm not sure I follow either.

2          I think defendant's position is plaintiff has to

3    arbitrate his claim, and then any class claim would be

4    precluded.

5          Am I correct, Mr. Forrest, that's your argument?

6          MR. FORREST:  Yes, that is right.

7          MR. MOSER:  Okay.

8          THE COURT:  So I think, Mr. Moser, I don't think

9    they are going to argue that you cannot arbitrate the claim or

10   that somehow he cannot pursue his claim.

11         MR. MOSER:  No, but to the extent the employer is

12   going to say that they cannot arbitrate class claims under

13   their current agreement, because it's violative of their

14   agreement with the union, I just would respectfully request

15   that that be set forth, if that's a position.

16         THE COURT:  Oh, I'm sure that is their position.

17         Mr. Forrest, you would argue that no class claim can

18   be brought before the arbitrator because of the 2018 CBA?

19         MR. FORREST:  Yes, we would argue that, yes.

20         THE COURT:  Yes.  So that's already there.  So you

21   should address that obviously, both of you.

22         MR. FORREST:  I think that will be part of the

23   argument about which contract controls.  We would set that

24   forth separately.

25         THE COURT:  What effect that would have on any class

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1  that could be certified or not or whether a class can be

2  certified; and, if one is, what does that mean?

3       If those claims, they are class claims and they

4  can't be arbitrated, does that mean by default they can be

5  brought before me; or, Mr. Forrest, will you argue they cannot

6  be brought at all, which is, I think, really, the essence of

7  your argument.

8       Maybe that's what you are getting at, Mr. Moser,

9  that you would argue under -- well, that's an interesting

10  question; and you should address it, Mr. Forrest.

11       Is it your client's position that because of the

12  2018 CBA about class action not being arbitrable and

13  everything having to be arbitrated, does that mean no class

14  claim can ever be brought by any employees?

15       MR. FORREST:  Well, no.  The agreement doesn't say

16  that, Your Honor.

17       The agreement is clear that class claims -- that,

18  first of all, individual claims can be brought; class claims

19  can be brought, if Mr. Moser were to seek the approval of both

20  the union and the employer.

21       THE COURT:  Oh, okay, but --

22       MR. FORREST:  The contract does not say class claims

23  can't be brought.  It does not say that.

24       It says the arbitrator doesn't have the authority to

25  hear them, if they aren't approved by the union and the

Collazos v. Garda

1    employer.

2              THE COURT:  I see.  So wait a sec.

3              Class claims can be brought, if approved by the

4    union -- well, sorry, they can be arbitrated if approved by

5    the union and the employer, correct?

6              MR. FORREST:  Yes.  Hold on.  I will pull up the

7    exact thing, Your Honor.  I'm sorry, Your Honor.

8              THE COURT:  Yes.  I'm looking at it as well.

9              Then the question is:  If the employer and the union

10   don't agree, can I assume an employee can bring their class

11   action claim in court?

12             MR. FORREST:  No.

13             THE COURT:  So your position is that no class action

14   claim in any forum unless it's arbitrated with the approval of

15   the union and the employer?

16             MR. FORREST:  Yes, that's right, because that would

17   be consistent with, I think, even Supreme Court law, that

18   even -- we don't have a class action waiver.  So I want to

19   differentiate between that.

20             THE COURT:  Yes.

21             MR. FORREST:  There needs to be approval for that,

22   but the Supreme Court and Second Circuit are clear that class

23   action waivers are actually enforceable because you are not

24   saying you don't have a forum to litigate your claims.

25             We are just saying this is a forum you can litigate

MICHELE NARDONE, CSR -- Official Court Reporter

Collazos v. Garda

1   it in and it has to be done this way.  So that's it.

2          So, just real quickly, the arbitrator, the union --

3          THE COURT:  No, no, no.  Mr. Forrest, Mr. Forrest,

4   save it for your written submission.  Okay.  Folks, save it

5   for your written submission.

6          MR. FORREST:  Okay.

7          THE COURT:  Thank you.  Thanks so much.

8          MR. FORREST:  Okay.

9          MR. MOSER:  Thank you.

10         THE COURT:  Thank you both.

11                        o O o

12

13  Certified to be a true and accurate transcript.
    /s/ Michele Nardone
14  MICHELE NARDONE, CSR -- Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

MICHELE NARDONE, CSR -- Official Court Reporter