Loren L. Forrest, Jr.
Holland & Knight LLP
31 West 52nd Street
New York, New York 10019
Tel: (212) 513-3200
Fax: (212) 385-9010

*Attorneys for Garda CL Atlantic, Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLLAZOS,<br><br>    Plaintiff,<br><br>v.<br><br>GARDA CL ATLANTIC, INC.,<br><br>    Defendants. | 21-cv-02095-PKC-JRC |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GARDA CL ATLANTIC, INC.'s REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION <u>TO COMPEL ARBITRATION</u>

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ II

PRELIMINARY STATEMENT ........................................................................................... 1

I. THE UNIONS HAVE NOT DECLINED TO ARBITRATE............................................. 1

II. GARDA HAS NEVER REQUESTED THAT THE UNIONS BE ORDERED TO ARBITRATE ................................................................................................................ 2

III. THE GRIEVANCE AND ARBITRATION PROVISION OF THE CBA IS MANDATORY WITHIN THE CONTEXT OF A MOTION TO COMPEL ..................... 3

IV. PLAINTIFF IS NOT A "WORKER ENGAGED IN FOREIGN OR INTERSTATE COMMERCE" AND IS NOT EXEMPT FROM THE FAA UNDER 9 U.S.C. § 1 ........... 4

V. THE CBAS CONTAIN A CLEAR AND UNMISTAKABLE WAIVER OF THE PLAINTIFF'S RIGHT TO A JUDICIAL FORUM ............................................................. 6

VI. UNDER EXISTING PRECEDENT DEFENDANT SHOULD BE ALLOWED TO EXPAND THE GROUNDS FOR ITS MOTION TO COMPEL ................................. 6

VII. THE LMRA AND NY ARBITRATION LAW APPLY .................................................. 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alfonso v. Maggies Paratransit Corp.*,
  203 F. Supp. 3d 244 (E.D.N.Y. 2016) ...................................................................3, 6

*Bonnot v. Cong*,
  331 F.2d 355 (8th Cir. 1964) ......................................................................................4

*Christie v. Loomis Armored US, Inc.*,
  No. 10-cv-02-11, 2011 WL 6152979 (D. Colo. Dec. 9, 2011) ...................................5

*Coca-Cola Bottling Co. of N.Y. v. Soft Drink & Brewery Workers Union Local
  812 Int'l Bhd. Of Teamsters*,
  242 F.3d 52 (2d Cir. 2001) .......................................................................................10

*Corp. Venezolana de Fomento v. Vintero Sales Corp.*,
  629 F.2d 786 (2d Cir. 1980) .....................................................................................10

*Davarci v. Uber Technologies, Inc.*,
  20-CV-9224 (VEC), 2021 WL 3721374 (S.D.N.Y. August 20, 2021) ......................5

*Diaz v. Michigan Logistics Inc.*,
  167 F. Supp. 3d 375 (E.D.N.Y. 2016) ..........................................................6, 7, 8, 10

*Dougherty v. American Tel. and Tel. Co.*,
  902 F.2d 201 (2d Cir. 1990) .......................................................................................9

*Feuer v. Stoler of Westbury, Inc.*,
  20-CV-6094, 2021 WL 4820605 (E.D.N.Y. 2021) ....................................................6

*Fieger v. Pitney Bowes Credit Corp.*,
  251 F.3d 386 .............................................................................................................10

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
  6 NY3d 371 (2006) ...................................................................................................10

*Raymond v. Mid-Bronx Haulage Corp.*,
  No. 15-cv-5803, 2017 WL 9882601 (S.D.N.Y. June 10, 2017) .............................8, 9

*Rojas v. Garda CL Se., Inc.*,
  No. 13-23173-CIV, 2015 WL 5084135 (S.D. Fla, August 28, 2015) ........................4

*Smith v. Allstate Power Vac Inc.*,
  482 F. Supp. 3d 40 (E.D.N.Y. 2020) ..........................................................................5

*Southwest Airlines Co. v. Saxon*,
    142 S. Ct. 1783 (2022) .................................................................................1, 8

*Suckling v. Iu.*,
    151 AD3d 664 (1st Dept 2017) ................................................................................9

*Sutphin Retail One, LLC v. Sutphin Airtrain Realty, LLC*,
    143 AD3d 972 (2d Dept 2016) ...........................................................................5, 10

*Vaca v. Sipes*,
    386 U.S. 171 (1967) ...................................................................................................3

**Statutes**

FAA § 1 ................................................................................................................... *passim*

Fair Labor Standards Act ...................................................................................................4

LMRA § 301 ........................................................................................................6, 7, 8, 9, 10

Motor Carrier Act ..........................................................................................................4, 6

New York Arbitration Law ...........................................................................................1, 6, 9

New York Labor Law .........................................................................................................7

**Other Authorities**

Local Rule 7.1(a)(1) .......................................................................................................7, 8

NY CPLR Article 75 ...........................................................................................................7

## PRELIMINARY STATEMENT

Defendant Garda CL Atlantic, Inc. ("Garda") respectfully submits this Memorandum of Law and the accompanying Supplemental Declaration of Loren L. Forrest, Jr., ("Forrest Dec.") in support of its Reply to Plaintiff's Opposition to Defendant's Motion to Compel Arbitration.

Before we address Plaintiff's arguments, we first address a procedural matter. After initial discussion of the recently-decided *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022), Plaintiff suggested that it might not even raise the FAA § 1 exemption in its Opposition and otherwise claimed that *Southwest* was irrelevant.[1] Plaintiff nevertheless raises the FAA § 1 exemption clause, clarified in *Southwest*, in its Opposition papers. Defendant also does not think *Southwest* exempts Plaintiff from the FAA. If the court, however, believes that additional fact-finding is required before ruling on the FAA § 1 matter, Defendant requests that the court first rule on Defendant's motion to compel, as grounded in New York Arbitration Law, so as to avoid the unnecessarily time consuming and costly fact-finding involved in addressing FAA § 1.

Defendant now turns to Plaintiff's arguments individually below.

### I. THE UNIONS HAVE NOT DECLINED TO ARBITRATE

Plaintiff alleges in its Opposition that the CBA is unenforceable given that "the union has declined to submit it to arbitration." Plaintiff's claim, however, refuses to take the Unions at their word. Importantly, Special and Superior Officers Benevolent Association ("SSOBA") did not "decline[] to submit" Collazos' grievance to arbitration. After all, SSOBA asserts in its statement that the grievance and arbitration procedures are compulsory for the responsible union.[2] SSOBA instead presented a *legal argument* that it is unable to process Plaintiff's grievance given its

---

[1] Forest Dec., ¶ 2, Exhibit 1R ("you are of course permitted to raise the *Southwest* case in your play, *should we pursue the claim* … in our opposition").
[2] ECF No. 23-1, "By their terms, the CBAs express the agreement reached between the bargaining parties to restrict the processing and resolution of all such claims to the grievance and arbitration procedure."

1

belief that it does not represent employees who ceased employment prior to a certain date.[3] This is not the same thing as declining to process Plaintiff's grievance.

It is important to note that, taking the Unions at their word, both Unions believe that *someone* is responsible for processing Plaintiffs' claim.[4] Nevertheless, Plaintiff asks that *no* union be considered responsible, and that Plaintiff proceed to litigate his case with no union being held to that responsibility. This contradictory position is easily resolved by a legal determination that SSOBA is the responsible union. In fact, if the Court grants Defendant's motion to compel, Plaintiff would require this determination anyway so he would know which Union to submit his grievance to. At that point, SSOBA could then process or not process Plaintiff's grievance – but it would do so in the face of statutory and contractual obligations to represent Plaintiff's grievance and the corresponding liability. Plaintiff instead seeks to paper over these details, and asks the Court to ignore the literal words of the Unions and obligation of the responsible union, which necessarily accompany Plaintiff's exhaustion of remedies.

## II. GARDA HAS NEVER REQUESTED THAT THE UNIONS BE ORDERED TO ARBITRATE

Throughout its Opposition, Plaintiff alleges that Defendant requests of this court "that the Unions be ordered to arbitrate". (Opposition, p. 9). However – and it cannot be stated strongly enough – Defendant does not ask the court to order the Unions to arbitrate. Rather, Defendant asks the court to find that *Plaintiff* is required to exhaust his available remedies for processing his grievance under the CBA, prior to seeking remedy with the courts.

As a result of this misdirection, all of Plaintiff's cited case law is pure non-sequitur. For

---

[3] ECF No. 23-1 ("it is respectfully submitted that the only claims that SSOBA *can process* are those claims which impact those workers employed in the bargaining unit on and after September 1, 2018") (emphasis added).
[4] ECF No. 23-1 (SSOBA noting that "[c]laims of any workers whose employment ceased on or before August 31, 2018 were represented by another Union" and implying that Collazos' claims are to be processed by USFPSO); ECF No. ECF No. 18-1 (UFSPSO noting "[t]he Collazos Complaint alleges that the violation occurred during the

instance, Plaintiff cites to *Vaca v. Sipes*, 386 U.S. 171, 196 (1967) in order to argue that Defendant is required to prove that the Unions have breached their duty of fair representation, in order to compel arbitration. (Opposition, p. 4). However, in *Vaca*, the court required that the *plaintiff employee* was responsible for proving the union's breach of the duty of fair representation.[5] Keeping this in mind, if any party is required to prove that the Union breached its duty of fair representation, it is Plaintiff who must show that his grievance was not discarded as frivolous as opposed to the Union's rejection being "arbitrary, discriminatory, or in bad faith." *Id.* at 191. Importantly, however, we are not yet at that stage as Plaintiff has not even submitted his grievance to SSOBA, and SSOBA has not processed, or declined to process, Plaintiff's grievance such that Plaintiff can argue that SSOBA breached its duty of fair representation.[6]

### III. THE GRIEVANCE AND ARBITRATION PROVISION OF THE CBA IS MANDATORY WITHIN THE CONTEXT OF A MOTION TO COMPEL

In arguing against Defendant's motion to compel, Plaintiff argues variously that unions have "discretion to either arbitrate or abandon statutory claims. " (Opposition, p. 6). Given this discretion, Plaintiff argues that the grievance and arbitration procedure in the CBAs are not "mandatory" within the context of a motion to compel. *Id.* These arguments are flatly incorrect.

First, Plaintiff argues that because the CBAs contain a provision allowing for the dispensing of illegitimate or insignificant issues, that this somehow proves that the "arbitration and grievance" procedure in the CBAs are not "mandatory" within the meaning of this Court's

---

pendency of the 2018 contract. Garda should request that Special and Superior Officers Benevolent Association process any arbitration, not the Union").
[5] *Id.* at 186 ("provided the *employee can prove* that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance").
[6] *See also Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 249 n.7 (E.D.N.Y. 2016) ("it is *Plaintiff* who must introduce evidence showing that he attempted to submit his claims to the grievance procedure but was ultimately precluded from arbitration.")

3

proffered question.[7]  Plaintiff here conflates the *final step* of the arbitration and grievance procedure (i.e., arbitration) with the arbitration and grievance *procedure*.  As such, even granting Plaintiff's argument, Plaintiff fails to show that the grievance and arbitration procedure is not mandatory or compulsory, which is the main question at issue.

Second, Plaintiff criticizes Defendant for citation of, inter alia, *Bonnot v. Cong*, 331 F.2d 355, 359-60 (8th Cir. 1964).  Plaintiff points out that in *Bonnot*, the collective bargaining agreement gave the union the ability to abandon its claims and so "the discretion to either arbitrate or abandon [] statutory claims."  However, this is hardly inconsistent with the claim that an arbitration provision is nevertheless still mandatory within the context of a motion to compel.  The court in *Bonnot* literally notes this in the next sentence.  ("The obvious purpose of the 'may' language is to give an aggrieved party the choice between arbitration or the abandonment of its claim.  The presence of this or similar language *has not prevented the conclusion that a claim, if pressed, is compulsorily subject to arbitration*").  *Bonnot*, 331 F.2d at 360 (emphasis added).

## IV. PLAINTIFF IS NOT A "WORKER ENGAGED IN FOREIGN OR INTERSTATE COMMERCE" AND IS NOT EXEMPT FROM THE FAA UNDER 9 U.S.C. § 1

Plaintiff argues that he is a worker "engaged in foreign or interstate commerce", citing to *Rojas v. Garda CL Se., Inc.*, No. 13-23173-CIV, 2015 WL 5084135 (S.D. Fla, August 28, 2015).  The *Rojas* case, however, does not involve application of FAA § 1, but rather application of the Motor Carrier Act ("MCA") exemption under the Fair Labor Standards Act ("FLSA").  Because *Rojas* refers to application of an entirely different statute, a different analysis in a different Circuit, and a different Plaintiff[8], direct reliance on *Rojas* is neither here nor there with regards to application of the FAA exemption under § 1.  Indeed, Plaintiff's citation to defendant's

---

[7] Opposition, p. 5 (Plaintiff alleging, "[u]nder the CBAs, the arbitration is non-compulsory and cannot be invoked by the Plaintiff," and highlighting CBA language "[*i*]*f after such management union meeting or mediation, arbitration is still necessary*").

4

Memorandum of Law in that case leaves out language to this effect.⁹

Plaintiff's citation to *Christie v. Loomis Armored US, Inc.*, No. 10-cv-02-11, 2011 WL 6152979 (D. Colo. Dec. 9, 2011) is similarly off base. The court does examine the exemption under FAA § 1. However, the defendant in that case explicitly identified itself as "engaged *in the business of interstate transport* of currency." *Id.* at *3. Plaintiff never argues that Garda is "engaged in the business of interstate transport of currency", and Defendant Garda has never stated anything to that effect. As Plaintiff bears the burden of proving that the FAA § 1 exemption applies, and has introduced no proof that it does, this Court should reject his FAA § 1 argument. *Smith v. Allstate Power Vac Inc.*, 482 F. Supp. 3d 40, 45 (E.D.N.Y. 2020)

Moreover, Plaintiff's citation to a lone case from 2011 ignores substantial developments in the application of FAA § 1. In *Davarci v. Uber Technologies, Inc.*, 20-CV-9224 (VEC), 2021 WL 3721374 (S.D.N.Y. August 20, 2021), the Court did a recent multi-district multi-circuit analysis of the § 1 exemption, examining the question of whether rideshare drivers were "engaged in foreign or interstate commerce" within the meaning of § 1, finding that a *majority of courts* found such drivers were not engaged in interstate commerce. Notably, the court distinguished Uber drivers from Amazon's AmFlex drivers - found to be exempt under § 1 - noting that AmFlex drivers "continue the last leg of an *unbroken, interstate journey overseen by Amazon*; Uber drivers are but *one, segmented part* of passengers' overall journeys." However, Garda's drivers are more like Uber drivers than AmFlex drivers. They do not transport goods as part of an unbroken interstate journey overseen by Garda, but rather are one, segmented and predominantly local part of the journey of goods. Plaintiff addresses none of this recent and relevant case law and so fails to establish that Plaintiff falls within the FAA § 1 exemption.

---

⁸ *Cf.* "Garda CL Southeast, Inc." and "Garda CL Atlantic".

Finally, even if this court finds that the FAA § 1 exemption applies, it should compel Plaintiff to arbitrate under New York Arbitration Law. As this Court has previously ruled, where a plaintiff's claims fall within the FAA § 1 exemption, they "are subject to mandatory arbitration under New York arbitration law … assuming that the FAA does not apply, state arbitration law governs." *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 380-81 (E.D.N.Y. 2016).

## V.   THE CBAS CONTAIN A CLEAR AND UNMISTAKABLE WAIVER OF THE PLAINTIFF'S RIGHT TO A JUDICIAL FORUM

Plaintiff grossly misinterprets *Lawrence* in arguing that the CBAs do not satisfy the "clear and unmistakable" standard necessary to compel arbitration. (Opposition, p. 9). Putting that aside, Defendant simply notes that courts in this Circuit have found agreement language, similar to that of the CBAs in this case, to satisfy the "clear and unmistakable" standard. Most notably, in *Alfonso*, 203 F. Supp. 3d at 248, n.3 (E.D.N.Y. 2016), this court examined an arbitration provision which stated "that disputes arising out of 'any rights or duties created … *under federal, state, or local law*' would be subject to arbitration" satisfied the Second Circuit's clear and unmistakable standard.[10] As the arbitration provisions in this case have nearly identical language, the court should find that they too satisfy the "clear and unmistakable" standard.

## VI.   UNDER EXISTING PRECEDENT DEFENDANT SHOULD BE ALLOWED TO EXPAND THE GROUNDS FOR ITS MOTION TO COMPEL

Plaintiff argues in its Opposition that it "never consented to an expansion of the legal grounds for relief, nor did the Defendant seek leave of the Court to do so." Plaintiff then argues that Defendant is not allowed to raise additional grounds (under New York Law and the LMRA), alternately arguing (1) that it was unduly prejudiced by Defendant's late inclusion of the

---

[9] Opposition Exhibit *Def MOL* at 1 "The transportation of currency is the transportation of property in interstate commerce, *as that term is defined by the Motor Carrier Act*." (emphasis on excluded language is added).
[10] *See also Feuer v. Stoler of Westbury, Inc.*, 20-CV-6094, 2021 WL 4820605 (E.D.N.Y. 2021) (compelling arbitration and noting specifically the CBA covering "any claim under any federal, state, or local law…").

additional grounds, and that (2) Defendant did not raise the LMRA or NY CPLR Article 75 in a request for pre-motion conference pursuant to Local Rule 7.1(a)(1).

Plaintiff's prejudice argument is undercut by the fact that Plaintiff's counsel initially suggested that it *might* (or might not) raise the FAA § 1 exemption just prior to Defendant's last request for an extension for its submittal. (Exhibit 1R). As such, Plaintiff was on notice that Defendant might seek alternative bases for compelling arbitration under the CBA. There was also nothing that prevented Plaintiff from requesting an additional extension – a request Defendant would happily grant – in order to give Plaintiff sufficient time to fully respond. Plaintiff did *not* speak with Defendant about an additional extension, and instead now claims prejudice as a form of strategy to completely sidestep the additional grounds for arbitration.

In any case, the Eastern District of New York has previously accepted the later expansion of grounds for compelling arbitration to include New York arbitration law, in response to a party's arguing exclusion under FAA § 1. In *Diaz*, 167 F. Supp. 3d at 375, plaintiff employees brought claims based on New York Labor Law, with defendants moving to compel arbitration under the FAA. After plaintiff argued in its Opposition papers that it fell within the FAA § 1 exclusion clause, defendant raised an alternative basis under New York arbitration law in a footnote of its Reply brief. *Id.* at 379, n. 2. The Court specifically observed that plaintiff "first raised the § 1 exemption in their opposition papers," and so allowed defendant to assert its additional grounds for compelling arbitration in its Reply, giving plaintiff a full opportunity to address the applicability of New York arbitration law.

As in *Diaz*, Plaintiff in this case has first raised the FAA § 1 exemption for the first time in a late communication. Assuming that the present case falls under the rubric of *Diaz*, the Court should allow Defendant to assert its additional grounds under New York arbitration law and the

LMRA. However, even if the court finds that *Diaz* does not apply, the court should still allow Defendant to assert its additional grounds for compelling arbitration, as Defendant specifically raised its additional grounds *prior to its Reply papers* in its initial motion to compel.

Regarding Plaintiff's Local Rule 7.1(a)(1) argument, Defendant properly raised the grounds for its motion that were appropriate at the time in its pre-motion letter. Plaintiff, who has the burden of establishing the FAA § 1 exemption, did not raise it in their pre-motion letter, but instead raised it after new developments in *Southwest* expanded the application of FAA § 1. Defendant subsequently expanded its grounds after the parties agreed to allow Defendant to adjust its motion, with Plaintiff explicitly raising the possibility of objecting under FAA § 1.

## VII. THE LMRA AND NY ARBITRATION LAW APPLY

### A. Plaintiff's Critique of Defendant's LMRA Claim Is Inapposite

In addressing Defendant's LMRA arguments, Plaintiff suggests that under *Raymond v. Mid-Bronx Haulage Corp.*, No. 15-cv-5803, 2017 WL 9882601 (S.D.N.Y. June 10, 2017), the court found that case law involving disputes between unions and employees were irrelevant to Defendant's argument that an employer's motion to compel is governed by the LMRA. (Opposition, p. 16). Plaintiff misconstrues the case. In *Raymond*, the plaintiff argued two separate points (1) that the LMRA applied to the motion to compel arbitration, and (2) that the LMRA's six-month statute of limitations also applied to the motion to compel arbitration.[11] Notably, Judge Sullivan rejected only the *second* of these two claims.[12] The court actually entertained the hypothesis of the LMRA's applicability, which it necessarily would have to do in order to reject the corresponding statute of limitations argument. As such, Plaintiff's argument

---

[11] *Raymond*, 2017 WL 9882601, at *3 ("Plaintiffs argue that … their motion to compel arbitration is governed by Section 301 of the [LMRA] … Plaintiffs further argue that the six-month statute of limitations under the LMRA applies to Defendants' motion to compel arbitration…").
[12] *Id.* at *3 ("[p]laintiffs cite to no authority for the proposition that Defendants' motion to compel arbitration … *is subject to the statute of limitations* for claims under the LMRA…").

8

does not appear to apply to Defendant's LMRA claim under its motion to compel.

In any case, the court in *Raymond* did observe that "neither Plaintiffs' complaint nor Defendants' motion to compel arbitration alleges a claim under the … LMRA." But, as will be elaborated on, the present case is distinct from *Raymond*, in that Defendant has in its motion to compel alleged a claim under the LMRA.

Elaborating on the original motion, Defendant's position on the applicability of § 301 of the LMRA is that: (1) Plaintiff's litigation of its statutory claims in court would necessarily cause a breach of the CBA – and in particular the grievance and arbitration provisions of the CBA. As the LMRA governs, inter alia, breaches of a collective bargaining agreement between union and an employer via Section 301, the LMRA is thus directly relevant to the issue of whether the motion to compel is granted or not.[13] (2) Defendant separately argues that Plaintiff's claims involve interpretation of the collective bargaining agreement, and as such are governed by the LMRA, under which Plaintiff must exhaust his remedies under the CBA prior to litigating his claims in court. *Dougherty v. American Tel. and Tel. Co.*, 902 F.2d 201 (2d Cir. 1990).

   B. <u>Plaintiff's Critique of Defendant's New York Arbitration Law Claim Is Inapposite</u>

Plaintiff alleges that the grievance and arbitration clause in the CBA is not "clear, explicit and unequivocal." Plaintiff, however, does not provide any argument aside from merely restating the standard for compelling arbitration under New York law.

Courts in New York have repeatedly found "shall" language to evince an unequivocal intent to arbitrate a dispute. *Suckling v. Iu.*, 151 AD3d 664 (1st Dept 2017) ("[t]he dispute resolution clause … provides that 'the Member *shall* submit [certain] dispute[s] to an arbitration procedure.' This unambiguous language evinces the parties' 'unequivocal intent to arbitrate the

relevant dispute.").[14]  In the present case, the CBAs define the relevant scope of issues in their definition of a "grievance" under Article 4(a), identifying a wide range of disputes, including "any claim under any … state … statute…".  They then identify a series of steps that the grievance "shall" go through pursuant to the "Arbitration and Grievance" procedure.[15]  The grievance and arbitration procedures under both CBAs are "clear, explicit and unequivocal" and so are mandatory, in the context of a motion to compel under New York State Arbitration Law.

In the case that the FAA § 1 exemption applies, state arbitration law governs.  *Diaz*, 167 F. Supp. 3d at 381.  As New York is the forum state, New York state choice of law governs.[16]  New York state has "the most significant relationship to the transaction and the parties", as Plaintiff brought his case in New York, the signing parties were both located in New York, it was negotiated in New York, and the CBA concerns activities performed in the State of New York.[17]  *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386.  Therefore, the court should apply New York state arbitration law, which compels arbitration in this case.

Dated: July 13, 2022
      New York, New York

      Respectfully submitted,

_____
      Loren L. Forrest, Jr.
      HOLLAND & KNIGHT LLP
      *Attorneys for Defendant Garda CL Atlantic, Inc.*

---

[13] *Coca-Cola Bottling Co. of N.Y. v. Soft Drink & Brewery Workers Union Local 812 Int'l Bhd. Of Teamsters*, 242 F.3d 52, 54, n.1 (2d Cir. 2001) ("Section 301 states, in pertinent part, 'Suits for violation of contracts between an employer and a labor organization … may be brought in any district court of the United States…").
[14] *See also Sutphin Retail One, LLC v. Sutphin Airtrain Realty, LLC*, 143 AD3d 972, 974 (2d Dept 2016); *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 NY3d 371, 373-74 (2006).
[15] "The grievance *shall* be presented in writing to the Company…"; "the Company *shall* have fourteen (14) calendar days to respond"; "the Union *shall* have fourteen (14) calendar days to request mediation or arbitration"; "…a management-union meeting *shall* be scheduled to attempt resolution of any dispute...")
[16] *Corp. Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir. 1980).
[17] In fact, the contract itself identifies the relevant location of the contract as Long Island City, NY in the header of the contract.  SSOBA is a New York based