CARLOS COLLAZOS,

                                        Plaintiff,         21-cv-02095

                v.
                                                          Hon. Pamela K. Chen, USDJ

GARDA CL ATLANTIC, INC.,

                                        Defendant.


PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION


Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
5 East Main Street
Huntington, NY 11743
(516) 671-1150
smoser@moseremploymentlaw.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CASES..................................................................................................................iii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .........................................................................................................................3

I. THE UNIONS HAVE DISCLAIMED A DUTY TO ARBITRATE THE PLAINTIFF'S CLAIMS ................................................................................................ 3

II. GARDA'S REQUEST THAT THE UNIONS BE ORDERED TO ARBITRATE IS INCONSISTENT WITH THE BROAD DISCRETION CONFERRED UPON THE UNIONS UNDER THE CBAS ....................................................................... 4

    A. The Arbitration Provision Does not Require the Unions to Arbitrate....................................4

    B. The Cases Cited by Garda are Either Inapplicable or Hold that a Union has Broad Discretion in Deciding Whether to Seek Arbitration ............................................................6

III. THE PLAINTIFF AND OTHER DRIVERS/MESSENGERS WERE "WORKERS ENGAGED IN FOREIGN OR INTERSTATE COMMERCE" AND THEREFORE EXEMPT FROM THE FAA UNDER 9 U.S.C. § 1 ........................................................7

IV. THE CBAS DO NOT CONTAIN A CLEAR AND EXPLICIT WAIVER OF THE PLAINTIFF'S RIGHT TO A JUDICIAL FORUM ........................................................9

V. ANY ATTEMPT BY GARDA TO PREEMPTIVELY LIMIT THE SCOPE OF THE CLASS IS PREMATURE ................................................................................ 12

VI. GARDA'S ATTEMPT TO EXPAND THE GROUNDS FOR ITS MOTION IN ITS SUPPLEMENTAL BRIEF DATED JUNE 24, 2022 SHOULD BE DENIED............... 13

    A. Facts ....................................................................................................................................13

    B. Southwest did not Change the Outcome of Defendant's Motion, and is Not the Reason for the Supplemental Brief.........................................................................................................14

    C. Defendant has not Complied with the Court's Individual Rules, the Local Rules of the Eastern District, and the Additional Grounds for Relief are Otherwise Untimely...............15

VII. EVEN IF THE COURT CONSIDERS THE MERITS OF GARDA'S ADDITIONAL BASES FOR RELIEF THE MOTION SHOULD BE DENIED ...................................... 16

    A. This Action is not Governed by the LMRA.........................................................................16

    B. If, as Defendant Argues, the LMRA applies, the Motion to Compel Under the LMRA is Barred by the Applicable Statute of Limitations..................................................................17

    C. The Arbitration Clause is Unenforceable Under New York Law ........................................18

CONCLUSION ...................................................................................................................18

# TABLE OF CASES

**Supreme Court Opinions**

*14 Penn Plaza L.L.C. v. Pyett,*
   556 U.S. 247, 129 S. Ct. 1456 (2009) ................................................................. 4

*AT&T Techs. v. Commc'ns Workers of Am.,*
   475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d (1986) ............................................ 4

*Circuit City Stores v. Adams,*
   532 U.S. 105, 121 S. Ct. 1302 (2001) ............................................................. 8, 15

*Southwest Airlines Co. v. Saxon,*
   213 L.Ed.2d 27 (U.S. June 6, 2022) ............................................................. 13, 14

*United Paperworkers Int'l Union v. Misco, Inc.,*
   484 U.S. 29 (1987) ............................................................................................. 16

*Vaca v. Sipes,*
   386 U.S. 171 (1967) (emphasis supplied) ............................................................ 4

*Wright v. Universal Mar. Serv. Corp.,*
   525 U.S. 70, 119 S. Ct. 391 (1998) ................................................................. 9, 10

**Second Circuit Opinions**

*Abdullayeva v. Attending Homecare Servs. L.L.C.,*
   928 F.3d 218 (2d Cir. 2019) ............................................................................... 9

*Alfonso v. Maggies Paratransit Corp.,*
   203 F. Supp. 3d 244 (E.D.N.Y. 2016) ................................................................. 3

*B & R Supermarket, Inc. v. Visa Inc.,*
   No. 17-CV-02738 (MKB), 2021 U.S. Dist. LEXIS 184644 (E.D.N.Y. Sept. 27, 2021) ....... 13

*Barr v. United Parcel Serv., Inc.,*
   868 F.2d 36 (2d Cir. 1989) ................................................................................. 6

*Chefs' Warehouse, Inc. v. Wiley,*
   No. 18-CV-11263 (JPO), 2019 WL 4640208 (S.D.N.Y. Sept. 24, 2019) .............................. 7

*Chen-Oster v. Goldman, Sachs & Co.,*
   449 F. Supp. 3d 216 (S.D.N.Y. 2020) ............................................................... 12

*Chesapeake & Potomac Tel. Co. v. NLRB,*
   687 F.2d 633 (2d Cir. 1982) ............................................................................... 9

*Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812, Int'l Bhd. of Teamsters,*

242 F.3d 52 (2d Cir. 2001) ................................................................. 16

*Dougherty v. Am. Tel. & Tel. Co.*,
    902 F.2d 201 (2d Cir. 1990) ............................................................ 16

*Dylan 140 L.L.C. v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*,
    2020 WL 7251003 (2d Cir. Dec. 10, 2020) ....................................... 16

*Eka v. Brookdale Hosp. Med. Ctr.*,
    No. CV 2015-04542 (KAM)(MDG), 2016 U.S. Dist. LEXIS 120213 (E.D.N.Y. Sept. 2,
    2016) .......................................................................................... 7

*Espada v. Guardian Serv. Indus.*,
    No. 18-CV-5443 (ILG) (JO), 2019 U.S. Dist. LEXIS 181187 (E.D.N.Y. Oct. 18, 2019) .........
    ................................................................................................ 3, 17, 18

*Holtz v. Rockefeller & Co.*,
    258 F.3d 62 (2d Cir. 2001) ............................................................. 15

*Jensen v. Cablevision Sys. Corp.*,
    372 F. Supp. 3d 95 (E.D.N.Y. 2019), appeal dismissed, leave to appeal denied, No. 19-628,
    2019 U.S. App. LEXIS 28056, 2019 WL 4296129 (2d Cir. Aug. 28, 2019) ....................... 12

*Lawrence v. Sol G. Atlas Realty Co.*,
    841 F.3d 81 (2d Cir. 2016) ............................................................. 9, 10

*Local 771, I.A.T.S.E. v. RKO Gen., Inc., WOR Div.*,
    546 F.2d 1107 (2d Cir. 1977) ........................................................... 7

*Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. A & M Heating, Air Conditioning,
Ventilation & Sheet Metal, Inc.*,
    314 F. Supp. 2d 332 (S.D.N.Y. 2004) .............................................. 16

*Morgan Stanley Grp., Inc. v. New Eng. Ins. Co.*,
    225 F.3d 270 (2d Cir. 2000) ........................................................... 11

*Raymond v. Mid-Bronx Haulage Corp.*,
    No. 15-cv-5803 (RJS), 2017 U.S. Dist. LEXIS 225475 (S.D.N.Y. June 10, 2017) .............. 17

*Raymond v. Mid-Bronx Haulage Corp.*,
    No. 15-cv-5803 (RJS), 2017 WL 9882601 (S.D.N.Y. June 10, 2017) .................................. 16

*Vargas v. Hill*,
    152 F. Supp. 2d 315 (S.D.N.Y. 2001) ............................................... 4

**Federal Court Opinions From Other Circuits**

*Bonnot v. Cong. of Indep. Unions*,
    331 F.2d 355 (8th Cir. 1964) ........................................................... 7

*Christie v. Loomis Armored US, Inc.*,
    No. 10-cv-02011-WJM-KMT, 2011 U.S. Dist. LEXIS 141994, 2011 WL 6152979 (D. Colo. Dec. 9, 2011) ............................................................................................................ 8, 9

*Cole v. Burns Int'l Sec. Servs.*,
    323 U.S. App. D.C. 133, 105 F.3d 1465 (D.C. Cir. 1997) ...................................... 15

*De Souza Silva v. Pioneer Janitorial Servs.*,
    777 F. Supp. 2d 198 (D. Mass. 2011) ...................................................................... 3

*Drake v. Hyundai Rotem U.S., Corp.*,
    Civil Action No. 13-0868, 2013 U.S. Dist. LEXIS 122393, 2013 WL 4551228 (E.D. Pa. Aug. 28, 2013) ............................................................................................................ 3

*Gutierrez v. Wells Fargo Bank, NA*,
    889 F.3d 1230 (11th Cir. 2018) ............................................................................... 12

*Rojas v. Garda CL Se., Inc.*,
    No. 13-23173-CIV-GAYLES/TURNOFF, 2015 U.S. Dist. LEXIS 114571 (S.D. Fla. Aug. 28, 2015) ............................................................................................................. 8

*Waithaka v. Amazon.com, Inc.*,
    966 F.3d 10 (1st Cir. 2020) ..................................................................................... 8

**New York State Cases**

*Riverdale Fabrics Corp. v. Tillinghast—Stiles Co.*,
    306 N.Y. 288, 118 N.E.2d 104 (1954) .................................................................... 18

*Robert Stigwood Org., Ltd. v. Atl. Recording Corp.*,
    83 A.D.2d 123, 443 N.Y.S.2d 726 (1st Dep't 1981) ............................................... 18

*Suckling v. Iu*,
    2017 N.Y. Slip Op. 05327 (2017) .......................................................................... 6, 7

# PRELIMINARY STATEMENT

Garda asserts that the Plaintiff is required to arbitrate his claims.  Defendant is incorrect, and the motion should be denied:

1. After the Defendant moved to compel arbitration, both the United Federation of Special Police and Security Officers, Inc. ("UFSPSO") and the Special and Superior Officers Benevolent Association ("SSOBA")(collectively the "Unions")  indicated that they have no obligation to arbitrate the Plaintiff's statutory claims.  Therefore, denying Plaintiff the right to pursue his claims in Court will result in a de-facto waiver of the Plaintiff's statutory rights and pursuing grievance procedures will only cause further delay;

2. The Unions did not agree to mandatory arbitration in the CBAs; therefore, Garda does not have a contractual right to compel the Unions to arbitrate the Plaintiff's claims;

3. The Plaintiff and other armored car drivers and messengers are a "class of workers engaged in foreign or interstate commerce" and therefore exempt from the FAA under 9 U.S.C. § 1; and

4. The CBAs do not contain a "clear and explicit waiver" of the Plaintiff's right to a judicial forum.

In addition, any request by the Defendant to preemptively limit the scope of the Class or to decide on the arbitrability of absent members' class claims is premature.  Finally, the Defendant's attempt, more than a year after commencement, one week before Plaintiff's opposition brief was due, and without the Court's leave, to broadly expand the grounds for its motion to include a motion to compel arbitration under the LMRA and New York CPLR Article 75, should be denied.  Even if the Court reaches the merits of these entirely new grounds, however, arbitration is not compelled.

## PROCEDURAL HISTORY[1]

On February 23, 2022, the UFSPSO wrote to the Court that it had been decertified as the employees' representative, and that therefore "Local 601 no longer exists."[2] The UFSPSO denied any duty to arbitrate the claims brought in this lawsuit.[3] On April 8, 2022, SSOBA wrote to the Court.[4] In its letter, SSOBA also disclaimed any duty to grieve the Plaintiff's NYLL claims.[5] Under the terms of the 2017 and 2018 CBAs, the Unions' pursuit of arbitration is entirely discretionary.[6] *See* Article 4(c). Furthermore, the CBAs do not confer on the Plaintiff the absolute right to arbitrate.

By docket order dated April 11, 2022, the Court directed the parties to indicate how they would like to proceed "in light of the Unions' assertions that: (1) the 2017 and 2018 CBAs were negotiated and entered into by different parties (2) UFSPSO has been decertified and is not required to arbitrate a grievance or a claim that accrued after its decertification, and (3) SSOBA can only process claims which impact workers employed on and after September 1, 2018, which is the date after Plaintiff's employment with Defendant concluded."

Defendant now moves to compel arbitration under the FAA.

---

[1] Procedural history is set forth in the Declaration of Steven J. Moser dated July 1, 2022.
[2] ECF No. 18-1.
[3] ECF No. 18-1.
[4] ECF No. 23-1.
[5] ECF No. 23-1.
[6] Article 4(a): "Any grievance shall be presented in writing to the Company by the Union representative within fourteen (14) calendar days from the occurrence or knowledge of the occurrence giving rise to this grievance."

**ARGUMENT**

## I.    THE UNIONS HAVE DISCLAIMED A DUTY TO ARBITRATE THE PLAINTIFF'S CLAIMS

An employee may litigate a statutory claim where the union has declined to submit it to arbitration, "lest the CBA operate as a waiver of the employee's [statutory] rights." *See Espada v. Guardian Serv. Indus.*, No. 18-CV-5443 (ILG) (JO), 2019 U.S. Dist. LEXIS 181187, at *10-11 (E.D.N.Y. Oct. 18, 2019) (collecting cases). Generally, courts have held that, "where the submission of a statutory claim to arbitration is exclusively within the province of the union and the union declines to pursue the matter, the waiver of an employee's right to a judicial forum is unenforceable." *De Souza Silva v. Pioneer Janitorial Servs.*, 777 F. Supp. 2d 198, 206 (D. Mass. 2011); *see Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 250-51 (E.D.N.Y. 2016); *Drake v. Hyundai Rotem U.S., Corp.*, Civil Action No. 13-0868, 2013 U.S. Dist. LEXIS 122393, 2013 WL 4551228, at *5-6 (E.D. Pa. Aug. 28, 2013).

Here the Unions have stated that they have no duty to arbitrate the Plaintiff's statutory claims. Therefore, ordering the Plaintiff to grieve the statutory claims would be futile, and would only serve to further delay the case. Moreover, the right to seek arbitration can only be asserted by the Unions.[7] Therefore, the Plaintiff may pursue his statutory claims in court.

---

[7] *See* CBA, Articla 4(b)("Any grievance shall be presented in writing to the Company by the *Union*"); Article 4(c)("If [Garda's] response is deemed inadequate by the Union, then the Union shall have fourteen (14) calendar days to request. . .arbitration."); Article 4(c)(If the Union believes arbitration is still "necessary" after the Union and Garda meet, then Garda and the "Union shall prepare a written position statement for submission to the arbitrator.").

## II.     GARDA'S REQUEST THAT THE UNIONS BE ORDERED TO ARBITRATE IS INCONSISTENT WITH THE BROAD DISCRETION CONFERRED UPON THE UNIONS UNDER THE CBAS

### A.     The Arbitration Provision Does not Require the Unions to Arbitrate

It is well established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Commc'ns Workers of Am., 47*5 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).  Garda suggests that the Court disregard the position statements submitted by the UFSPSO and SSOBA indicating that they are under no obligation to arbitrate the Plaintiff's statutory claims, and compel the Unions to arbitrate against their will.  An "order compelling arbitration *[is] one of the available remedies when a breach of the union's duty is proved[.]" Vaca v. Sipes*, 386 U.S. 171, 196 (1967) (emphasis supplied).  However, Garda has not asserted, much less proved, that the Unions have breached either the terms of the CBA or their duty of fair representation by indicating they are not under an obligation to arbitrate the Plaintiff's statutory claims.

As previously mentioned, the CBAs afford the Unions wide latitude in deciding whether to pursue arbitration.  As the employees' exclusive bargaining representative, a union ordinarily "enjoys broad authority . . . in the administration of the collective bargaining contract. *14 Penn Plaza L.L.C. v. Pyett*, 556 U.S. 247, 255-56, 129 S. Ct. 1456, 1463 (2009).  For this reason, a union's duty to its members does not ordinarily encompass the duty to arbitrate. *Vaca*, 386 U.S. at 192.  Stated another way,

> [T]he individual employee has no absolute right to have his grievance arbitrated under the collective bargaining agreement at issue, and [therefore] a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious[.]

*Id.* at 195, 87 S. Ct. at 919; *see Vargas v. Hill*, 152 F. Supp. 2d 315, 320 (S.D.N.Y. 2001).

In *Vaca,* the Supreme Court indicated that an employee's absolute right to arbitration under a CBA is inconsistent with the purposes of the LMRA:

> [W]e do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement. In L.M.R.A. s 203(d), 61 Stat. 154, 29 U.S.C. s 173(d), Congress declared that 'Final adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.' In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. . . .
>
> If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. . . This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully.

*Id*. at 191-92.

Under the CBAs, arbitration is non-compulsory and cannot be invoked by the Plaintiff.

The CBAs describe the following procedure:  First, the Union presents a grievance to which Garda responds.[8]

> If [Garda's] response [to a grievance] is *deemed inadequate* by the Union, then the Union shall have fourteen (14) calendar days to request mediation or arbitration [. . .] Prior to. . . arbitration a management-union meeting shall be scheduled to attempt resolution of any dispute for which arbitration has been requested.  *If after such management union meeting or mediation, arbitration is still necessary* because a legitimate as well as significant issue of contract application remains open, then both the Company and the Union shall prepare a written position statement for submission to the arbitrator.[9]

This language does not impose an absolute duty on the Unions to arbitrate statutory claims.

Garda must therefore show that the union's decision not to pursue arbitration, standing alone,

---

[8] Section 4(a) of the 2017 and 2018 CBAs.
[9] Section 4(c) of the 2017 and 2018 CBAs (emphasis supplied).

constitutes a breach of the duty of fair representation because it is "arbitrary, discriminatory or in bad faith." *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967)).

Plaintiff's position is that the Unions have at all times fairly represented their members. Garda agreed to give the Unions broad discretion over the arbitration of its member's claims under the CBAs. Garda now suggests that no such discretion exists, and that the Unions must be compelled to arbitrate their members' statutory claims.[10] Moreover, absent evidence that the Unions have breached their duty of fair representation to the Plaintiff by not pursuing arbitration, Garda is not entitled to specific enforcement of the CBA.

### B. The Cases Cited by Garda are Either Inapplicable or Hold that a Union has Broad Discretion in Deciding Whether to Seek Arbitration

Garda claims that the arbitration provision is "mandatory" even though the Unions can decide if Garda's response to a grievance is "*inadequate*" and even if the Unions can decide whether *"arbitration is still necessary."* Garda ignores the plain meaning of the contract, and the cases cited by Garda are either inapplicable or support the Plaintiff's position that the Union has broad discretion to arbitrate or abandon statutory claims.

Garda first cites to *Suckling v. Iu*, 2017 N.Y. Slip Op. 05327 (2017) to suggest that union members are bound by a CBA arbitration provision. *Iu,* however, did not involve members of a *union* - it involved members of an *LLC*. Under the explicit terms of the members' operating

---

[10] The ramifications of Garda's position that SSOBA has an absolute duty to pursue arbitration of known statutory violations are far reaching. In essence, SSOBA, now advised of the statutory violations, could potentially be under an obligation to seek individual arbitration of the statutory claims of each and every union member who is subject to the unlawful policies. Furthermore, SSOBA could potentially be liable to its members for not seeking individual arbitration of these claims. Such a result would be inconsistent with the LMRA. In the event that Defendant is successful in imposing such obligation on SSOBA Garda should absorb the arbitration costs and legal expenses associated with arbitrating these claims, and should be permitted to retain counsel experienced in wage and hour law to pursue these individual arbitrations. Otherwise, the result could be financially crippling for the union.

agreement, which was signed by all of the LLC's members, the parties in *Iu* had agreed to "submit [certain] dispute[s] to an arbitration procedure." *Id.* . The court easily concluded that the members of an LLC who agree to arbitrate certain disputes must arbitrate those disputes. *Id.* . .

*Eka v. Brookdale Hosp. Med. Ctr.*, No. CV 2015-04542 (KAM)(MDG), 2016 U.S. Dist. LEXIS 120213, at \*22 (E.D.N.Y. Sept. 2, 2016) is inapplicable. In *Eka* the court found that the plaintiff's claims to enforce the CBA were simply masquerading as statutory violations. Therefore, the LMRA preempted the claims asserted by the plaintiff. *Id.* .

The remaining cases cited by Garda stand for the proposition that a union has broad discretion to either arbitrate statutory claims or abandon them. In *Local 771, I.A.T.S.E. v. RKO Gen., Inc., WOR Div.*, 546 F.2d 1107, 1116 (2d Cir. 1977), *Chefs' Warehouse, Inc. v. Wiley*, No. 18-CV-11263 (JPO), 2019 WL 4640208, at \*5-6 (S.D.N.Y. Sept. 24, 2019), and *Bonnot v. Cong. of Indep. Unions*, 331 F.2d 355, 359-60 (8th Cir. 1964), the union and the employer signed a CBA containing an arbitration provision which was later claimed to not be binding by one of the signatories. For example, in Bonnot, the union suggested that the CBA did not compel arbitration of disputes between the union and the employer because it only provided that "either party *'may'* request [arbitration]; that it is thus permissive and optional." *Id.* . The Eighth Circuit disagreed, and held that where a CBA contains a provision that the union "may" arbitrate claims "the obvious purpose of the 'may' language is to give [the Union] the choice between arbitration or the abandonment of its claim." *Id.* . These cases support the Plaintiff's position that under the terms of the CBA, the Unions have the discretion to either arbitrate or abandon his statutory claims.

## III.   THE PLAINTIFF AND OTHER DRIVERS/MESSENGERS WERE "WORKERS ENGAGED IN FOREIGN OR INTERSTATE COMMERCE" AND THEREFORE EXEMPT FROM THE FAA UNDER 9 U.S.C. § 1

Despite the broad scope of Section 2, the FAA does not apply to all contracts that include arbitration provisions. Section 1 of the Act exempts employment contracts of certain categories of workers from the Act's coverage. *See* 9 U.S.C. § 1. Specifically, the Act

does not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Id. This case concerns the scope of the residual clause of that exemption: "or any other class of workers engaged in foreign or interstate commerce."

*Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 16 (1st Cir. 2020). The Supreme Court has held that the residual clause exempts from the FAA "contracts of employment of transportation workers." *Circuit City Stores v. Adams*, 532 U.S. 105, 119, 121 S. Ct. 1302, 1311 (2001).

As observed by one court, "there can be little argument that Garda transports goods in interstate commerce." *Rojas v. Garda CL Se., Inc.*, No. 13-23173-CIV-GAYLES/TURNOFF, 2015 U.S. Dist. LEXIS 114571, at *10 (S.D. Fla. Aug. 28, 2015). In *Rojas,* the plaintiffs were, like Mr. Collazos, Drivers/Messengers employed by Garda. The court noted that "their duties included the use of armored vehicles to transport currency, negotiable instruments, and other valuables." *Rojas*, 2015 U.S. Dist. LEXIS 114571, at *11. Garda argued that "[t]he transportation of currency *is the transportation of property in interstate commerce*[.] Indeed, every court that has looked at this issue has reached the same conclusion." *See* Def MOL at 1 (emphasis supplied). The court agreed, noting that "armored car drivers and helpers engage in interstate commerce even when they only travel within one state." *Rojas*, 2015 U.S. Dist. LEXIS 114571, at *12-13 (compiling cases). "Based on well-established precedent in this and other circuits, the Court finds that Plaintiffs have engaged in interstate commerce[.]" *Rojas*, 2015 U.S. Dist. LEXIS 114571, at *10-13.

Similarly, in *Christie v. Loomis Armored US, Inc.*, No. 10-cv-02011-WJM-KMT, 2011 U.S. Dist. LEXIS 141994, 2011 WL 6152979 (D. Colo. Dec. 9, 2011), the court concluded plaintiff was a transportation worker subject to the FAA exemption because she was "'actually employed as a driver for' Loomis, personally responsible for 'transport[ing] currency, a good that

is undisputedly in the stream of interstate commerce.'" *Christie*, 2011 U.S. Dist. LEXIS 141994 (2011).

Plaintiff and the class are armored car drivers and/or messengers who worked for Garda. They drove armored vehicles to transport currency. Therefore, their contracts of employment are exempt from the application of FAA.

## IV.    THE CBAS DO NOT CONTAIN A CLEAR AND EXPLICIT WAIVER OF THE PLAINTIFF'S RIGHT TO A JUDICIAL FORUM

"The language of a collective bargaining agreement will [only] effectuate a waiver [of a statutory right] only if it is 'clear and unmistakable' in waiving the statutory right." *Chesapeake & Potomac Tel. Co. v. NLRB, 68*7 F.2d 633, 636 (2d Cir. 1982). This is because "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver" in a CBA. *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80, 119 S. Ct. 391, 396 (1998). This standard ensures that an employee's right to bring statutory claims in court is not waived by a "confusing" CBA. *Abdullayeva v. Attending Homecare Servs. L.L.C.*, 928 F.3d 218, 223 (2d Cir. 2019).

"The CBA here does not satisfy this exacting standard." *See Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 84 (2d Cir. 2016). Turning to the language of the CBA,

> A grievance is defined as a condition that exists as a result of an unsatisfactory response or adjustment or failure to adjust a legitimate controversy, claim or dispute by an employee, shop steward or the Union concerning rates of pay, entitlement to compensation, benefits, hours, or working conditions set forth herein, including without limitation, claims of harassment or discrimination or hostile work environment in any form, including without limitation, any claim based on race, sex, religion, national origin, ethnicity, gender, disability or·perceived disability, or age, veteran or military status, or any claim of retaliation for making any such or similar claim, or the interpretation or application of this Agreement or any agreement made supplementary thereto, or any claim under any federal, state or local law, statute or regulation or under any common law theory whether residing in contract, tort or equity or any other claim related to or part of the employment relationship.
>
> * * *

9

Prior to actual submission to arbitration a management-union meeting shall be scheduled to attempt resolution of any dispute for which arbitration has been requested. Any agreement to submit the grievance to mediation with the Federal Mediation and .Arbitration Service shall stay any arbitration until the mediation is held and is unsuccessful or the parties agree to forego mediation. If after such management union meeting or mediation, arbitration is still necessary because a legitimate as well as significant issue of contract application remains open, then both the Company and the Union shall prepare a written position statement for submission to the arbitrator.[11]

Garda cites *Lawrence*, 841 F.3d at 84 for the proposition this language is clear and explicit, because it mentions "any claim under any federal, state or local law." *Lawrence* was based on the Supreme Court's unanimous decision in *Wright*, 525 U.S. at 79, 119 S. Ct. at 396 (holding that "any CBA requirement to arbitrate [statutory claims] must be particularly clear."). However, the Second Circuit in *Lawrence* did not find that an otherwise confusing, vague, or obscure arbitration provision becomes "clear and unmistakable" simply because it mentions "all claims under federal or state or local law."

According to *Lawrence,* "a statute must specifically be mentioned in a CBA ***for it to even approach*** Wright's 'clear and unmistakable' standard." *Lawrence*, 841 F.3d at 84 (emphasis supplied)(citing *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999). "[C]ourts have concluded that for a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA must, ***at the very least****,* identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims." *Lawrence*, 841 F.3d at 84 (emphasis supplied)(citing *Ibarra v. UPS*, 695 F.3d 354, 359-60 (5th Cir. 2012) (collecting cases). In other words, a CBA must, *at a bare minimum,* mention specific statutes or refer generally to all statutes, but this, standing alone, does not carry the day.

---

[11] See 2017 and 2018 CBA, Article 4.

The Second Circuit also stated that "the CBA must [1] contain a clear and unmistakable provision under which the employees [2] agree to submit to arbitration [certain] causes of action arising out of their employment." *Id.* (numbering supplied)(citing *Carson v. Giant Food, Inc.*, 175 F.3d 325, 331-32 (4th Cir. 1999). Therefore, in order for an arbitration clause in a CBA to effect a valid waiver of the right to a judicial forum, two requirements must be met:

(1)     The provision must be clear and unmistakable[12]; and

(2)     The provision must mention either (a) the specific statutory claims at issue or (b) all statutory claims generally.

Garda attempts to reduce the inquiry to the mere mention of specific statutory claims or all statutory claims. However, this circumvents the critical issue of whether the language in the 2017 or 2018 CBAs are, on their face, clear, unmistakable, unambiguous, and easily understood. An otherwise vague, ambiguous, obscure, confusing or easily misunderstood arbitration provision in a CBA does not become clear because it contains the magic words "any claim under any federal, state or local law." Such an interpretation is not consistent with Second Circuit and Supreme Court precedent, *supra*. It also divests the Court of its inherent authority to decide whether the waiver is clear. *See Morgan Stanley Grp., Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) ("The initial interpretation of a contract is a matter of law for the court to decide.").

The Court has the authority to determine whether, as a matter of law, the 2017 and 2018 CBAs contain an arbitration provision which is clear, unambiguous, not being capable of being misunderstood. The Court is not artificially limited in its inquiry to whether or not the provision contains "magic words."

---

[12] Webster's Dictionary defines clear and unmistakable as follows: clear : "*free from obscurity or ambiguity : easily understood*" (https://www.merriam-webster.com/dictionary/clear (last visited May 27, 2022)); unmistakable : "*not capable of being mistaken or misunderstood*" (https://www.merriam-webster.com/dictionary/unmistakable (last visited May 27, 2022)).

## V. ANY ATTEMPT BY GARDA TO PREEMPTIVELY LIMIT THE SCOPE OF THE CLASS IS PREMATURE

Garda has not moved for an order compelling arbitration of putative class members claims, nor would such a request be appropriate. Putative class members are not parties, and any such request would be premature. Chief Judge Margo K. Brodie recently explained,

While the Second Circuit has not addressed when a motion to compel [arbitration] is appropriately filed in the context of class action litigation, courts routinely hold that "the earliest time to move to compel arbitration [of putative class member's claims] is after class certification." *Chen-Oster v. Goldman, Sachs & Co., 44*9 F. Supp. 3d 216, 234-35 (S.D.N.Y. 2020) (collecting cases), *objections overruled, No. 10-CV-6950,* 2021 U.S. Dist. LEXIS 175593, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021); *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) ("This [c]ourt will not compel absent putative class members who are not before this [c]ourt to binding arbitration or issue a ruling regarding the enforceability of the provision. Any such ruling is procedurally improper and analogous to an advisory opinion." (citing *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-1884, 2011 U.S. Dist. LEXIS 55292, 2011 WL 1772401, at *7 (D. Colo. May 10, 2011))), *appeal dismissed, leave to appeal denied*, No. 19-628, 2019 U.S. App. LEXIS 28056, 2019 WL 4296129 (2d Cir. Aug. 28, 2019); *see also Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018) ("[I]t cannot be said that [the defendant's] failure to seek arbitration with the unnamed class members prior to class certification manifested inconsistency with its arbitration rights, considering that it would have been impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the [d]istrict [c]ourt to rule on those motions before the class was certified."); *Rushing v. Williams-Sonoma, Inc.*, No. 16-CV-1421, 2020 U.S. Dist. LEXIS 188095, 2020 WL 6787135, at *2-3 (N.D. Cal. Oct. 8, 2020) ("[The defendant] could not move to arbitrate claims against. . .unnamed class members before class certification. Accordingly, it did not have an existing right to compel arbitration of [individual class member's claims] and could not have acted inconsistently with that right."); *Jackson v. Aliera Companies*, No. 19-CV-1281, 2020 U.S. Dist. LEXIS 149772, 2020 WL 4787990, at *4 (W.D. Wash. Aug. 18, 2020) ("[D]istrict courts within this [c]ircuit have determined that a party cannot move to compel putative class members to arbitration prior to class certification because putative class members are not parties to the action." (collecting cases)), *reconsideration denied*, 2020 U.S. Dist. LEXIS 187338, 2020 WL 5984075 (W.D. Wash. Oct. 8, 2020); *Forby v. One Techs., LP*, No. 16-CV-856, 2020 U.S. Dist. LEXIS 128913, 2020 WL 4201604, at *8 (N.D. Tex. July 22, 2020) (stating that the defendants "have not waived their rights to compel arbitration against the absent class members, nor can the court make such determination prior to class certification, as the class members are not yet parties to the litigation" (citing *Cruson v. Jackson Nat'l life Ins. Co.*, 954 F.3d 240, 251 (5th Cir. 2020))); *In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*, No. 12-CV-711, 2016 U.S. Dist. LEXIS 133206, 2016 WL 5508843, at *2 (D.N.J. Sept. 28, 2016) ("It is not appropriate for the [c]ourt to exclude potential class members from this class action and deprive those individuals of their day in court prior to their being made a party in this case."); *In re TFT-LCD (Flat*

*Panel) Antitrust Litig.*, No. 07-1827, 2011 U.S. Dist. LEXIS 55033, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) ("It does not appear to the [c]ourt that defendants could have moved to compel arbitration [of class member's claims] prior to the certification of a class in this case because, as defendants point out, 'putative class members are not parties to an action prior to class certification.'" (quoting *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091 (S.D. Cal. 2004))).

*B & R Supermarket, Inc. v. Visa Inc., No.* 17-CV-02738 (MKB), 2021 U.S. Dist. LEXIS 184644, at *14-16 (E.D.N.Y. Sept. 27, 2021). Therefore, any attempt by Garda to convert its motion into a motion limiting the scope of the class or directing absent class members to arbitrate claims on an individual basis should be denied.

## VI.     GARDA'S ATTEMPT TO EXPAND THE GROUNDS FOR ITS MOTION IN ITS SUPPLEMENTAL BRIEF DATED JUNE 24, 2022 SHOULD BE DENIED

After its motion was fully briefed, Garda indicated that it wanted to "supplement its brief" in light of *Southwest Airlines Co. v. Saxon,* 213 L.Ed.2d 27, 34 (U.S. June 6, 2022).[13]  Plaintiff consented.  If Garda's supplemental brief had discussed *Southwest* and the issues presented therein, Plaintiff would not object.  However, Garda only mentioned *Southwest* in a footnote[14] and then proceeded to include two entirely new bases for compelling arbitration: the LMRA and Article 75 of the CPLR.[15]  Plaintiff never consented to an expansion of the legal grounds for relief, nor did the Defendant seek leave of the Court to do so.

### A.     Facts[16]

On September 15, 2021, Garda advised the Court of its intention to make a motion to compel arbitration under the Federal Arbitration Act.  *See* ECF No. 12.  At a November 10, 2021

---

[13] The issue in *Southwest* was whether "ramp supervisors" who often loaded and unloaded cargo, but did not actually transport the cargo, were exempt.  The Supreme Court answered "yes", but Mr. Collazos, unlike an individual who simply loaded or unloaded cargo at a fixed location, was a driver physically transporting currency, and was exempt.  *Southwest* did not change that.

[14] *See* Defendant's Supplemental Brief, at 1, n. 2.

[15] *See* Defendant's Supplemental Brief, VIII, at 20-21.

[16] Supporting facts are set forth in the accompanying Declaration of Steven Moser dated July 1, 2022.

conference Garda mentioned only the FAA as the basis for its anticipated motion. *See* Transcript, ECF No. 16, at 31.

On January 11, 2022 Garda served its first Notice of Motion to Compel Arbitration and Memorandum of Law seeking an order compelling arbitration only under "the Federal Arbitration Act, 9 U.S.C. § 1."

On May 18, 2022, Garda served its amended Notice of Motion and Memorandum of Law, seeking relief only "pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 1."

On June 15, 2022, Garda asked Plaintiff for an extension of time to *"resubmit its brief"* to address *Southwest,* which had been decided on June 6, 2022. Garda made no mention of the LMRA or Article 75 of the CPLR, and neither did *Southwest. Southwest* held that ramp supervisors were exempt transportation workers under the FAA. Based upon Garda's representation that it would be addressing *Southwest*, and believing that the Plaintiff was an exempt transportation worker even if *Southwest* had never been decided, Plaintiff consented. On June 21, 2022, with the Plaintiff's consent thus obtained, Garda requested leave to amend its brief. *See* ECF No. 30. Garda informed the Court that it "plans only minor revisions to its original submission." *Id.*

However, Garda's supplemental brief paid homage to *Southwest* in a footnote, and then proceeded to assert entirely new bases for the motion to compel: Section 301 of the Labor Management Relations Act ("LMRA") and article 75 of the New York C.P.L.R.

**B.** ***Southwest*** **did not Change the Outcome of Defendant's Motion, and is Not the Reason for the Supplemental Brief**

*Southwest Airlines Co. v. Saxon,* 213 L.Ed.2d 27, 34 (U.S. June 6, 2022) had no effect on the outcome of Garda's motion. Before *Southwest,* "every circuit to consider the issue squarely ha[d] found that section 1 of the FAA exempts. . . employment contracts of workers *actually*

*engaged in the movement of goods*[.]" *Cole v. Burns Int'l Sec. Servs.*, 323 U.S. App. D.C. 133, 105 F.3d 1465, 1471 (D.C. Cir. 1997) (emphasis supplied). The Supreme Court agreed more than 20 years ago in *Circuit City* that "transportation workers" could be defined as those "actually engaged in the movement of goods." *Circuit City Stores*, 532 U.S. at 112, 121 S. Ct. at 1307. Here it is undisputed that the Plaintiff was a Driver/Messenger. He was "actually engaged in the movement of goods." *See id.* at 119, 121 S. Ct. at 1311 For more than 20 years, courts have held that the FAA exempts workers from its coverage who, like the Plaintiff, were *actually engaged in the movement of goods,* and *Southwest* did not change that.

    **C.**    **Defendant has not Complied with the Court's Individual Rules, the Local Rules of the Eastern District, and the Additional Grounds for Relief are Otherwise Untimely**

The defendant did not mention the LMRA or Article 75 of the New York CPLR until June 24, 2022, more than 9 months after its pre-motion letter was due. Garda did not raise the LMRA or NY CPLR Article 75 in a request for a pre-motion conference pursuant to the Court's Individual Rules. Instead, it obtained the Plaintiff's consent and the Court's permission to serve a "supplemental brief" after its motion had been twice briefed, without revealing that it would assert additional grounds for relief in the supplemental brief.

Local Rule 7.1(a)(1) states that the notice of motion must "specify the applicable rules or statutes pursuant to which the motion is brought, and [. . .] specify the relief sought by the motion." A Court has broad discretion to enforce its individual rules and the local rules. *See Holtz v. Rockefeller & Co., 25*8 F.3d 62, 73 (2d Cir. 2001). Failure to comply with Rule 7.1, "standing alone, is sufficient cause for granting or denying a motion. It is not necessary to reach the merits." *Avillan v. Donahoe,* No. 13 Cv. 509 (PAE), 2015 U.S. Dist. LEXIS 20050, 2015 WL 728169, at *6 (S.D.N.Y. Feb. 19, 2015). Because the Notice of Motion only seeks relief

"pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 1", the Court has discretion

to deny Garda's request for relief under the LMRA and NY CPLR Article 75.

Under these unique circumstances, the Court may exercise its discretion to enforce its

discretion and deny the request for additional relief without reaching the merits.

## VII.  EVEN IF THE COURT CONSIDERS THE MERITS OF GARDA'S ADDITIONAL BASES FOR RELIEF THE MOTION SHOULD BE DENIED

### A.    This Action is not Governed by the LMRA

Garda suggests that the LMRA applies.  Garda cites two lines of cases: (1) cases between

the union and the employer to enforce a CBA;[17] and (2) cases brought by an employee against the

employer seeking enforcement of the terms of the CBA.[18] .

*Raymond v. Mid-Bronx Haulage Corp.,* No. 15-cv-5803, 2017 WL 9882601 (S.D.N.Y.

2017), did not "grant[] defendant's motion to compel arbitration under interpretation of motion to

compel under the LMRA."[19]  In *Raymond*, the plaintiff opposed the employer's motion to compel

arbitration of contractual grievances, arguing that the LMRA's six month statute of limitations

applied.  Judge Sullivan advised that cases "between *unions* and employers involving petitions to

enforce an arbitration provision in a collective bargaining agreement" were not on point:

> The LMRA statute of limitations applies to unfair labor practices claims before the National Labor Relations Board, claims that are "analogous to a claim under the NLRA" such as unfair representation claims [. . .] By its own terms, Section 301 governs "[s]uits by and against labor organizations" for "violation[s] of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29

---

[17] These cases, cited at pages 20-21 of Defendant's brief, include *Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812, Int'l Bhd. of Teamsters, 242* F.3d 52, 54-55 (2d Cir. 2001), *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 41 n.9 (1987); *Dylan 140 L.L.C. v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*, 2020 WL 7251003, at *5 (2d Cir. Dec. 10, 2020), and *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. A & M Heating, Air Conditioning, Ventilation & Sheet Metal, Inc., 314 F.* Supp. 2d 332, 352-53 (S.D.N.Y. 2004).  As noted by Judge Sullivan in

[18] These cases, cited at page 21 of the Defendant's brief, include *Dougherty v. Am. Tel. & Tel. Co., 90*2 F.2d 201 (2d Cir. 1990),  *Raymond v. Mid-Bronx Haulage Corp.*, No. 15-cv-5803 (RJS), 2017 WL 9882601 (S.D.N.Y. June 10, 2017) and *Eka. V. Brookdale Hospital Medical Center*, CV 2015-04542, 2016 WL 11263669 (E.D.N.Y. 2016).

[19] *See* Defendant's Supplemental Brief, at 21.

U.S.C. § 185(a) [. . .] Plaintiffs' brief cites to cases between *unions* and employers involving petitions to enforce an arbitration provision in a collective bargaining agreement [. . .] In contrast to these cases, the instant case is not between an employer and a union, and neither Plaintiffs' complaint nor Defendants' motion to compel arbitration alleges a claim under the NLRA or LMRA.

*Raymond v. Mid-Bronx Haulage Corp.*, No. 15-cv-5803 (RJS), 2017 U.S. Dist. LEXIS 225475, at

*9 (S.D.N.Y. June 10, 2017) (emphasis in original).

In *Eka. V. Brookdale v. Hospital Medical Center,* CV 2015-04542, 2016 WL 11263669

(E.D.N.Y. 2016), the court did not compel the plaintiff to arbitrate his New York Labor Law

Claims under the LMRA.[20][21]  Instead, as stated *supra*, the court found that Plaintiff was

attempting to disguise claims for breach of a CBA as independent statutory violations. *Id.* .

Therefore, the LMRA preempted the claims which arose under the CBA.  Moreover, the court in

*Eka* denied Defendants' request to compel arbitration. *Id.* .

**B.     If, as Defendant Argues, the LMRA applies, the Motion to Compel Under the LMRA is Barred by the Applicable Statute of Limitations**

The LMRA statute of limitations begins to run when a plaintiff makes "explicit objection

to arbitration proceedings."  *Raymond*, 2017 U.S. Dist. LEXIS 225475, at *10.  In this action,

Plaintiff explicitly opposed arbitration on October 1, 2021.  Defendant did not seek to compel

arbitration under the LMRA until June 24, 2022, more than 6 months after being notified of the

objection.  The claims are therefore barred by the applicable statute of limitations.

---

[20] *See* Defendant's Supplemental Brief, at 1, n. 1, which states the holding in *Eka. V. Brookdale Hosp. Med. Center, CV 2015-04542*, 2016 WL 11263669 as follows: "finding New York Labor Law claims governed by Section 301 of the LMRA, and compelling Plaintiff's filing of claims under grievance procedures in CBA."
[21] See Defendant's Supplemental Brief, at 21, which states the holding in *Eka. V. Brookdale Hosp. Med. Center, CV 2015-04542*, 2016 WL 11263669 as follows: "court examining New York Labor Law claims, and under the LMRA compelling Plaintiff to submit grievances under collective bargaining agreement's grievance procedures."

**C.** **The Arbitration Clause is Unenforceable Under New York Law**

New York law imposes strict requirements on all arbitration agreements. For an arbitration agreement to be enforceable, it must be clear that the parties intended "to render arbitration the exclusive remedy." *Riverdale Fabrics Corp. v. Tillinghast—Stiles Co.*, 306 N.Y. 288, 291, 118 N.E.2d 104, 106 (1954). "[P]arties are not to be led into arbitration unwittingly through subtlety." *Id. . .* Moreover:

> The agreement must be clear, explicit and unequivocal (*Matter of Acting Supt. of Schools* [*United Liverpool Faculty Assn.*], 42 NY2d 509, 512; *Matter of Lehman v Ostrovsky*, 264 NY 130, 132) and must not depend upon implication or subtlety (*Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], 306 NY 288, 291; *Matter of Doughboy Inds.* [*Pantasote Co.*], 17 AD2d 216, 220 [Breitel, J.]).

*Robert Stigwood Org., Ltd. v. Atl. Recording Corp.*, 83 A.D.2d 123, 126, 443 N.Y.S.2d 726, 728 (1st Dep't 1981) (sic).

Because the provisions of the CBA do not make arbitration "the exclusive remedy" and are otherwise unclear, vague and equivocal, the motion to compel arbitration under New York Law, if considered on its merits, should similarly be denied.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court deny the Defendant's motion to compel arbitration.

Dated: Huntington, New York
      July 1, 2022

Respectfully Submitted,
Moser Law Firm, P.C.

By: Steven John Moser
