UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Carlos Collazos, *individually and on behalf of all others similarly situated,*

Plaintiff(s),

-against-

Garda CL Atlantic, Inc.

Defendant(s).

**Case No. 21-cv-05017-PKC-SIL**

**MOTION TO COMPEL**

## PLAINTIFFS' MOTION FOR AN ORDER PERMITTING DISCLOSURE OF RECORDS PURSUANT TO NEW YORK WORKERS' COMPENSATION LAW 110-A

Plaintiff Carlos Collazos, Individually and on behalf of all others similarly situated, by the Moser Law Firm, P.C. hereby files this motion for an order authorizing the New York State Workers' Compensation Board ("NYSWCB") to comply with a subpoena for the production of documents dated September 7, 2022 by providing forms "C-2" and "C-3."

**I. INTRODUCTION**

For more than 125 years the New York Labor Law ("NYLL") has required employers to pay manual workers weekly and all wages within 7 days after the end of the workweek in which they were earned. *See People v. Vetri*, 309 N.Y. 401, 405, 131 N.E.2d 568, 570 (1955); L. 1890, ch. 388, § 1; NYLL § 191.

On February 6, 2016, armored car drivers and messengers at Garda CL Atlantic, Inc.'s Central Islip facility filed a lawsuit against Garda for failure to comply with the timely pay provisions of the NYLL, and for failure to pay overtime for hours worked over 40.[1] *See D'Aguino v. Garda CL Atlantic, Inc.*, 16-cv-641 (E.D.N.Y.).

On March 11, 2021 Carlos Collazos commenced this action in the Supreme Court, Queens

---

[1] Garda pays armored car drivers and messengers at 1 ½ times the regular rate of pay only after 50 hours worked in a given workweek.

1

County under the overtime and timely pay provisions of the NYLL. *See* Complaint (ECF No. 1-1). Garda promptly removed this action and invoked the Court's diversity jurisdiction. *See* Notice of Removal (ECF No. 1), and "Letter in response to the Court's Order to Show Cause" (ECF No. 8).

Although Garda did not change its overtime or frequency of pay policies in response to the 2016 lawsuit, Garda claims that two CBAs which were put in place after the commencement of the *D'Aguino* matter now insulate it from lawsuits in federal court to recover for the overtime and delayed wage violations. Garda's fully briefed motion to compel arbitration was filed on July 13-14, 2022. *See* ECF Nos. 33-41.

## II.    RELEVANT FACTS

In September 2022, Plaintiff served a subpoena upon the NYSWCB to obtain certain records, including C-2 forms and C-3 forms.

The NYSWCB objected to the subpoena on September 16, 2022, stating, in part:

Workers' Compensation Law §110-a(1) provides for the release of Board records "upon the order or subpoena of a court of competent jurisdiction." The Board would, therefore, comply with a subpoena duces tecum, or an order, issued by a judge in this case compelling the production of the requested records under FRCP Rule 45(d)(2)(B)(i).[2]

On September 23, 2022, as required by Local Rule 37.3 counsel for the Plaintiff and counsel for the NYSWCB had a telephone conversation and engaged in good faith efforts in an attempt to resolve this discovery dispute. We were unable to resolve the issue as the NYSWCB is not authorized to respond to a subpoena unless issued or directed by a court.

---

[2] A true and accurate copy of the NYS Workers' Compensation Boards' objections to the subpoena with the subpoena annexed thereto is attached as Exhibit 1.

## III. ARGUMENT

### A. The Records Sought are Relevant

#### 1. The C-2 and C-3 forms are Concern Whether Plaintiffs Were "Manual Workers"

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FRCP 26(b)(1). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FRE 401.

In order to be entitled to the weekly payment of wages, plaintiffs must show that they were "manual workers". See N.Y. Lab. L. 191-1(a). The plaintiff alleges that he and other drivers/messengers were untimely paid because they were "manual workers." The New York Labor Law defines a "manual worker" as "a mechanic, workingman, or labourer[.]" N.Y. Lab. L. § 190(4). In determining whether a particular class of workers is "manual" has been addressed in at least two ways. First, courts and have stated that some workers fit squarely and plainly within the definition found in NYLL § 190(4). *See Cuzco v. Orion Builders, Inc.*, 2010 U.S. Dist. LEXIS 51622, at *11 (S.D.N.Y. May 26, 2010)(holding that "construction and carpentry workers -- appear to fit squarely within the definition of 'manual worker' as that term is used in the NYLL."). Second, courts have deferred to the NYSDOL's interpretation of the term "manual worker."[3]

> It has been th[e] Department [of Labor's] longstanding interpretation of the term "manual workers" that the term includes employees who spend more than 25 percent of their working time performing physical labor. The Department [of Labor] interprets "physical labor" broadly to include a wide range of physical activities undertaken by employees[.]

NYSDOL Opinion Letter RO-09-0066 (available at https://statistics.labor.ny.gov/legal/counsel/

---

[3] *See Palmer v. Amazon.com, Inc.*, 498 F. Supp. 3d 359, 377 (E.D.N.Y. 2020)("An agency's consistent and long-standing interpretation of a statute it administers is entitled to considerable weight.")(citing *United States v. Clark*, 454 U.S. 555, 565, 102 S. Ct. 805, 70 L. Ed. 2d 768 (1982)).

pdf/Other/RO-09-0066%20Manual%20Workers.pdf); *see also Gonzalez v. Gan Israel Preschool*, No. 12-CV-06304 (MKB) (VMS), 2014 U.S. Dist. LEXIS 34633, at *38 (E.D.N.Y. Feb. 5, 2014)(applying NYSDOL's interpretation regarding the 25% physical labor threshold and finding that plaintiff's janitorial work qualified her as a "manual worker"). It follows that the extent of the physical activities performed by armored car drivers and messengers at Garda may be a fact of consequence in determining the outcome.

The C-2 and C-3 forms contain information concerning the nature and extent of the physical activities performed by armored car drivers and/or messengers at Garda CL Atlantic.[4] More specifically, Garda was required to furnish the following information in form C-2 ("Employer's First Report of Work-Related Injury/Illness"):

- "Occupation Description"[5];
- "Cause of Injury (i.e. . . .Machine, Strain or Injury by lifting, etc)"[6];
- "Manual Classification Code"[7];
- How the accident occurred[8];

The C-3 ("Employee Claim") form also contains information concerning the physical activities performed by armored car drivers and messengers working for Garda, and asks employees the following questions:

- "What was your job title or description?"[9]
- "What types of activities did you normally perform at work?"[10]
- "What were you doing when you were injured []? (e.g., unloading a truck, typing a

---

[4] True and accurate copies of forms C-2 and C-3 are annexed hereto as Exhibits 2 and 3, respectively.
[5] See Exhibit 2, at 1.
[6] See Exhibit 2, at 2.
[7] See Exhibit 2, at 3.
[8] See Exhibit 2, at 2.
[9] See Exhibit 3, section (C)(1)
[10] See Exhibit 3, section (C)(2)

4

report)"[11]

Above the signature, on both forms, is the following warning:

An employer or carrier, or any employee, agent, or person acting on behalf of an employer or carrier, who KNOWINGLY MAKES A FALSE STATEMENT OR REPRESENTATION as to a material fact in the course of reporting, investigation of, or adjusting a claim for any benefit or payment under this chapter for the purpose of avoiding provision of such payment or benefit SHALL BE GUILTY OF A CRIME AND SUBJECT TO SUBSTANTIAL FINES AND IMPRISONMENT.[12]

Therefore, the representations made in these forms may have considerable weight.

### 2. The Documents Sought are Relevant to Class Certification.

This case is analogous to misclassification cases in which employees claim they were improperly classified as exempt from overtime. In such cases, "commonality does not require plaintiffs to show that class members perform identical duties—an 'impossible task.'" *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 415 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015) (quoting *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160 (JPO), 2011 U.S. Dist. LEXIS 141696, 2011 WL 6140512, at *3 (S.D.N.Y. Mar. 20, 2013)). However, the documents may go to the consistency of the duties of and physical activities performed by armored car drivers and messengers, which is relevant to the commonality issue. *See id.*

### B. The Records Sought are Not "Privileged" and NYSWCL 110-a Specifically Envisions Court Orders Authorizing Their Disclosure

As previously noted, the rules permit "discovery regarding any *nonprivileged* matter[.]" FRCP 26(d)(1)(emphasis supplied). "Confidential" is not the same as "privileged." For example, "litigants cannot shield a settlement agreement from discovery merely because it contains a confidentiality provision", even if the agreement was so ordered by a district court. *ABF Capital Mgmt. v. Askin Capital Mgmt.*, 96 Civ. 2978 (RWS), 95 Civ. 8905 (RWS), 97 Civ. 1856 (RWS),

---

[11] See Exhibit 2, section (D)(5)
[12] See Exhibits 1 & 2 (emphasis in original).

97 Civ. 4335 (RWS), 98 Civ. 6178 (RWS), 98 Civ. 7494 (TSZ), 2000 U.S. Dist. LEXIS 3633, at *8 (S.D.N.Y. Feb. 8, 2000).

Although titled "Confidentiality of workers' compensation records", NYS Worker's Compensation Law ("NYSWCL") 110-a actually *permits disclosure of NYSWCB records by subpoena* and does not make them "privileged." The absence of the mention of "privilege" in NYSWCL 110 is not accidental. The New York State legislature knows how to make records "privileged" and specifically describes them as "privileged" when seeking to protect them from disclosure. *See e.g.* CPLR 4502 (describing the spousal "privilege"); CPLR 4503 (attorney-client "privilege"); CPLR 4504 (physician-patient "privilege"); CPLR (protecting "privilege[d]" communication to clergy).

### C. Even if the Court orders the disclosure of the records, they will still be protected.

If Plaintiffs counsel is provided workers' compensation records via court subpoena or court order, the confidentiality of personally identifiable information must be maintained. According to NYSWCL 110-a,

> It shall be unlawful for any person who has obtained copies of board records or individually identifiable information from board records to disclose such information to any person who is not otherwise lawfully entitled to obtain these records.[13]

In other words, the law is carefully crafted to permit a party seeking workers' compensation records to do so by court order so that they may be used in a proceeding, and also protects the records from further disclosure.

### D. There is Good Cause to Order Disclosure Prior to the Resolution of Defendants' Motion to Compel Arbitration

Here, a rule 26(f) conference has not been held, and the Defendant has filed a pre-answer motion to compel arbitration. In deciding whether to permit discovery prior to a Rule 26(f)

---

[13] NY WCL 110-a(4).

6

conference, courts apply a "flexible standard of reasonableness and good cause." *Admarketplace, Inc. v. Tee Support, Inc.*, No. 13 Civ. 5635 (LGS), 2013 U.S. Dist. LEXIS 129749, at *3 (S.D.N.Y. Sept. 11, 2013). The relevant provision of NYSWCL § 110-a provides that the records sought by Plaintiff herein may only be disclosed "upon the order or subpoena of a court of competent jurisdiction[.]" Because the records sought cannot be obtained except by court order, and because a decision on the motion to compel arbitration may foreclose Plaintiff's ability to obtain the NYSWCB records, there is "good cause" to resolve this issue prior to a decision on the motion to compel arbitration.

Because a court order is necessary to obtain the records, an order compelling arbitration would foreclose Plaintiff's ability to obtain the records sought. It is well settled that an arbitrator lacks the authority to order discovery from non-parties. *Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 212 (2d Cir. 2008)(The FAA "does not enable arbitrators to issue pre-hearing document subpoenas to entities not parties to the arbitration proceeding[.]"); *Matter of Roche Molecular Sys. Inc. (Gutry)*, 2018 NY Slip Op 28125, ¶ 3, 60 Misc. 3d 222, 225, 76 N.Y.S.3d 752, 754 (Sup. Ct.). Moreover, the New York State Workers' Compensation Law does not permit an *arbitrator* to authorize the disclosure of the records sought. As previously mentioned, and as confirmed by the Workers' Compensation Board, it may only disclose the records upon order of this Court. *See* NYSWCL 110-a. Therefore, should the matter be arbitrated, the Plaintiff may be without the benefit of the records sought.

Plaintiff was not subject to the CBA containing the arbitration clause, as he left employment prior to the effective date thereof. The unions have disclaimed any duty to grieve the Plaintiff's statutory claims or pursue arbitration thereof. Therefore, Plaintiff's statutory claims are *not* subject to arbitration. However, even if arbitration is not compelled, Court intervention regarding this issue will be necessary. In other words, a Court order will be required regardless of

7

whether the Defendant's motion to compel arbitration is granted or denied.  Should the matter not be referred to arbitration, the Defendant will not be prejudiced or burdened thereby.  However, should the matter be referred to arbitration, Plaintiff may be prejudiced by not being able to obtain the documents sought.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff requests that the Court issue an order authorizing the New York State Worker's Compensation Board to disclose C-2 and C-3 forms in response to the subpoena.  Plaintiff will absorb the cost of compliance so that the NYSWCB is not unduly burdened.

Dated: October 24, 2022
       Huntington, New York

                              MOSER LAW FIRM, P.C.

                              *Steven John Moser*
                              Steven John Moser (SM6628)
                              5 East Main Street
                              Huntington, New York 11743
                              steven.moser@moserlawfirm.com
                              (631) 824-0200

TO:     All Counsel of Record (Via ECF)